**SO ORDERED.**

**SIGNED this 03 day of January, 2013.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| OTERIA Q. MOSES, | CASE NUMBER: 12-05563-8-RDD |
| DEBTOR | |

| | |
|---|---|
| OTERIA Q. MOSES, | ADVERSARY PROCEEDING NUMBER: 12-00174-8-RDD |
| Plaintiff | |
| v. | |
| CASHCALL, INC., | |
| Defendant | |

### ORDER DENYING MOTION TO DISMISS
### OR TO STAY AND COMPEL ARBITRATION

Pending before the Court is the Motion to Dismiss or to Stay and Compel Arbitration (the "Motion") and Memorandum in Support of Motion to Dismiss or to Stay and Compel Arbitration filed by CashCall, Inc. (the "Defendant") on November 13, 2012 and the Memorandum Opposing Defendant's Motion to Dismiss or to Stay and Compel Arbitration (the "Response") filed by Oteria Q. Moses (the "Plaintiff") on December 5, 2012. The Court conducted a hearing on December 6, 2012 in Wilson, North Carolina to consider the Motion and Response.

## BACKGROUND

The Plaintiff filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on August 1, 2012. The Defendant filed proof of claim number three, in the amount of $1,929.02 on August 8, 2012. In response to the Defendant's proof of claim, the Plaintiff filed this adversary proceeding objecting to the proof of claim on August 17, 2012. The Plaintiff seeks a declaratory judgment that the debt owed to the Defendant is void based on the Defendant's violation of the North Carolina Consumer Finance Act, N.C. Gen. Stat. §§ 53-164 to -191 (2012). The complaint also alleges the Defendant engaged in acts that qualify as Prohibited Acts by Debt Collectors under N.C. Gen. Stat. § 75-50 to -56 (2012) in attempts to collect on the debt and seeks actual and statutory damages.

The Plaintiff entered into a consumer loan agreement (the "Loan") with Western Sky Financial, LLC ("Western Sky") in May 10, 2012 for the advancement of funds in the principal amount of $1,500.00.[1] Western Sky subsequently assigned the Loan to the Defendant. The terms of the Loan provide that the Loan is subject solely to the laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation and that by executing the loan agreement, the borrower consents to the Cheyenne River Sioux Tribal Court having sole subject matter and personal jurisdiction over any disputes. Further, the loan agreement provides any dispute will be resolved by arbitration conducted by the Cheyenne River Sioux Tribal Nation. A dispute is defined as any controversy or claim between the borrower and Western Sky or the holder or servicer of the Loan.

In the Motion, the Defendant requests that the adversary proceeding be dismissed pursuant

---

[1] Western Sky is a limited liability company registered in South Dakota that makes short term consumer loans.

to Federal Rule of Civil Procedure 12(b)(1), (b)(6), made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7012, or in the alternative, be stayed and sent to arbitration. The Defendant asserts that the causes of action under North Carolina law are non-core proceedings, which are subject to arbitration provisions, even when brought in relation to a bankruptcy case. Therefore, the Court should dismiss the adversary proceeding for lack of subject matter jurisdiction or stay the proceeding and compel arbitration.

The Plaintiff argues the bankruptcy court has subject-matter jurisdiction to hear the objection to claim because it is a core proceeding and not subject to any arbitration provision. Further, the Plaintiff asserts that the bankruptcy court may also hear and enter final determination on any non-core proceedings because they exclusively depend on the determination of whether the underlying loan agreement is legal.

## DISCUSSION

The Defendant brings the Motion pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012. Rule 12(b) provides that a party may assert the defenses of lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (b)(6). "Whether the parties have agreed to arbitrate their disputes is a jurisdictional question." *Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC*, 792 F.Supp.2d 897, 900 (E.D.N.C. 2011) (citing *Bhd. of Ry. & S.S. Clerks v. Norfolk S. Ry. Co.*, 143 F.2d 1015, 1017 (4th Cir. 1944)).

Within the Fourth Circuit, arbitration provisions "generally are favored in federal courts. In bankruptcy proceedings, however, whether a proceeding is a 'core proceeding' as defined by 28 U.S.C. § 157(b) generally determines whether an arbitration clause can be enforced." *TP, Inc. v.*

*Bank of Am., N.A.*, 479 B.R. 373, 382 (Bankr. E.D.N.C. 2012) (quoting *D & B Swine Farms, Inc. v. Murphy Brown, L.L.C.*, 430 B.R. 737, 741 (Bankr. E.D.N.C. 2010) (citation omitted)). Fourth Circuit precedent indicates "[a]rbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case." *Id.* (quoting *White Mountain Mining Co., L.L.C. v. Congelton, L.L.C.*, 403 F.3d 164, 169 (4th Cir. 2005)). Based on the test established in *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987), "the burden is on the party opposing arbitration to show that Congress intended to 'limit or prohibit waiver of a judicial forum for a particular claim' under the Federal Arbitration Act." *D & B Swine*, 430 B.R. at 741 (quoting *In re Blanchard Transp. Serv., Inc.*, No. 07-01830-8-JRL, 2008 WL 619379 (Bankr. E.D.N.C. Feb. 29, 2008)). Thus, generally non-core matters are "referred to arbitration consistent with the policy in favor of arbitration; however if a core proceeding is at issue, the policy in favor of centralized determination in the bankruptcy court generally prevails." *TP, Inc.*, 479 B.R. at 382.

As explained in *TP, Inc. v. Bank of America*, "the court must evaluate each cause of action in the present adversary proceeding to determine whether it is a core proceeding." *Id*. The bankruptcy court may hear "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1); *TP, Inc.*, 479 B.R. at 382; *Stern v. Marshall*, – U.S. –, 131 S.Ct. 2594, 2604, 180 L.Ed.2d 475 (2011). Section 157(b)(2) provides a non-exclusive list of example core proceedings, including, "the allowance or disallowance of claims against the estate" as well as "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C . § 157(b)(2); *TP, Inc.*, 479

B.R. at 382; *Stern*, 131 S.Ct. at 2604. In *TP, Inc. v. Bank of America*, the bankruptcy court determined that "although an action was initiated by a complaint rather than a traditional counterclaim, 'such actions are in the nature of a counterclaim when asserted against parties who have filed proofs of claim in the bankruptcy case.'" *TP, Inc.*, 479 B.R. at 383 (explaining state law claims were core proceedings because the claims were essentially counterclaims brought against creditors who filed proofs of claim in the bankruptcy case) (citation omitted). The Court agrees with the findings in *TP, Inc. v. Bank of America*, and finds that the Plaintiff's claims against the Defendant are statutorily core, as they "function as counterclaims to the claims filed [] against the estate." *Id*.

*TP, Inc. v. Bank of America* further instructs that once a proceeding is determined to be statutorily core, it must also be determined to be constitutionally core in light of the Supreme Court decision in *Stern v. Marshall*. In *Stern v. Marshall*, the Court found that although bankruptcy courts may enter final judgments on a debtor's counterclaims against persons filing claims against the estate under § 157(b)(2)(C), bankruptcy courts may not enter final orders in non-bankruptcy matters based in common law or state law, which would not necessarily be resolved in the claims allowance process. *TP, Inc.*, 479 B.R. at 383-84. In order to determine whether a matter is constitutionally core, the action must (i) stem from the bankruptcy itself, *or* (ii) "necessarily be resolved in" the claims allowance process. *Id*. (citing *Stern*, 131 S.Ct. at 2618). "If *either* of the prongs in the *Stern* test are met, the matter is constitutionally core." *TP, Inc.*, 479 B.R. at 384 (citation omitted). Should neither prong be met, the bankruptcy court then "lacks constitutional authority to enter final judgment and may only submit proposed findings of fact and conclusions of law to the district court." *Burns v. Dennis (In re Se. Materials, Inc.)*, 467 B.R. 337, 348 (Bankr. M.D.N.C. 2012).

In the present case, the Plaintiff seeks a declaratory judgment finding the debt to and claim of the Defendant is void based on the Defendant's violation of the North Carolina Consumer Finance Act, N.C. Gen. Stat. §§ 53-164 to -191 (2012) and alleges the Defendant engaged in acts that qualify as Prohibited Acts by Debt Collectors under N.C. Gen. Stat. §§ 75-50 to -56 (2012). These causes of action will "be treated as counterclaims asserted by the debtor to the claim filed by the creditor," and are statutorily core. *TP, Inc.*, 479 B.R. at 383.

The first cause of action for a declaratory judgment, requests that the Court determine that the Loan is void and unenforceable as the activities of the Defendant and its predecessors in originating, acquiring, and servicing the Loan failed to comply with the requirements of the North Carolina Consumer Finance Act. The Debtor asserts the Defendant or its predecessors failed to obtain a license with the North Carolina Commissioner of Banks and failed to adhere to the requirements of N.C. Gen. Stat. § 53-176(a) (2012). Compl. 5-7. Based on these violations, the Plaintiff objects to the allowance of the proof of claim as provided by 11 U.S.C. § 506(a) because the underlying loan is void and of no legal validity. Compl. 7. This cause of action is statutorily core in that it involves the "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(B). Undertaking the analysis of whether the cause of action is constitutionally core, the Court finds the cause of action does not stem from the bankruptcy itself, as it arose "in state court and is based on state law." *TP, Inc.*, 479 B.R. at 384. However, a determination of whether the violations of the North Carolina consumer protection statutes render the loan agreement void or legally ineffective is necessarily intertwined in the claims allowance process. "For a counterclaim to be necessarily resolved in ruling on the proof of claim, the relationship must be such that resolution of the counterclaim would alter the amount sought by the claimant." *TP, Inc.*, 479 B.R.

at 384 (citing *In re Olde Prairie Block Owner*, 457 B.R. 692, 698-99 (Bankr. N.D.Ill. 2011)). Should the Court determine the underlying loan agreement is void, such resolution would undoubtedly alter the claim amount. Therefore, the Court finds the first cause of action to be constitutionally core. Accordingly the Court shall hear and enter final determination on the first cause of action.

In the second cause of action, the Plaintiff alleges the Defendant committed several violations of N.C. Gen. Stat. §§ 75-50 to -56 by attempting to collect on a debt rendered unenforceable by North Carolina's consumer protection statutes and seeks alternative relief in the way of damages. The second claim is statutorily core as it qualifies as a "counterclaim[] by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C). However, in light of *Stern*, the Court must undertake a constitutionally core analysis. The cause of action does not stem from the bankruptcy itself because the cause of action is based in state statutory law. *See TP, Inc.*, 479 B.R. at 384. Whether the second cause of action is necessarily resolved in the claims allowance process is a more difficult question. The cause of action relates to actions that occurred after the origination of the Loan and does not attack the validity of the Defendant's claim or assert the Defendant should recover a lesser amount. Instead, the second cause of action seeks actual damages for emotional distress and anxiety caused by the Defendant's actions as well as statutory damages provided by N.C. Gen. Stat. § 75-56(b) (2012). These damages are unrelated to the Defendant's proof of claim and are only related to the bankruptcy case in that if successful, the bankruptcy estate will recover any non-exempt funds and disburse them to claims in accordance with the bankruptcy code.

In *TP, Inc. v. Bank of America*, as in this case, the debtor filed a complaint alleging causes of action based in North Carolina law that were viewed as counterclaims to a creditor's proof of

claim.² One of the causes of actions considered was for unfair and deceptive trade practices under North Carolina state law. The bankruptcy court found the unfair and deceptive trade practice claims would not "affect the calculation of the amount of [the creditor's] proof of claim, such that each [claim] fail[ed] to satisfy the second prong of *Stern*." *TP, Inc.*, 479 B.R. at 387. Therefore, the Court cannot find the Plaintiff's cause of action for violation of N.C. Gen. Stat. §§ 75-50 to -56 is a constitutionally core counterclaim. *TP, Inc.*, 479 B.R. 373; *see also Burns v. Dennis* 467 B.R. at 359-60 (debtor's claims under chapter 75 of the North Carolina General Statutes were not constitutionally core proceedings as they did not stem from the Bankruptcy Code and adjudication was not necessary "in order to allow or disallow [a] proof of claim"); *Tolliver v. Bank of Am. (In re Tolliver)*, 464 B.R. 720, 740 (Bankr. E.D. Ky. 2012) ("claims for violation of the Kentucky Consumer Protection Act will not be 'necessarily resolved' in the claims resolution process"). The Court also finds that the claims brought under N.C. Gen. Stat. §§ 75-50 to -56 will not affect the calculation of the amount of the Defendant's claim in the bankruptcy case in accordance with the guidance provided by *Stern*. Therefore, because the Court lacks constitutional authority to enter final judgment on the second cause of action, findings of fact and conclusions of law on the cause of action will be submitted to the district court. *See Burns v. Dennis*, 467 B.R. at 348; 28 U.S.C. § 157(c)(1).

Therefore, the Motion is **DENIED** as to the first cause of action. As to the second cause of action, the Motion is also **DENIED**, and the Court shall submit findings of fact and conclusions of

---

²The causes of action included constructive fraud, fraud, fraud in the inducement, recission, breach of fiduciary duty, negligence and negligent misrepresentation, tortious interference, breach of contract, unfair and deceptive trade practices, and equitable subordination.

law to the district court for entry of a final order or judgment.  The Defendant shall have twenty (20) days from the entry of this order to file an answer or otherwise respond to the Plaintiff's complaint.

**SO ORDERED.**

**END OF DOCUMENT**