**SO ORDERED.**

**SIGNED this 02 day of April, 2013.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

| | |
|---|---|
| OTERIA Q. MOSES, | CHAPTER 13 |
| | CASE NO. 12-05563-8-RDD |
| DEBTOR | |

_____

| | |
|---|---|
| OTERIA Q. MOSES, | ADVERSARY PROCEEDING NO. |
| | 12-00174-8-RDD |
| PLAINTIFF | |
| v. | |
| CASHCALL, INC., | |
| DEFENDANT | |

**ORDER DENYING MOTION TO STAY PENDING APPEAL**

Pending before the Court is the Motion to Stay Pending Appeal and Memorandum in Support of the Motion filed by Cashcall, Inc., ("Defendant") on January 17, 2013. A hearing was held on February 7, 2013, in Wilson, North Carolina, to consider the Motion and Memorandum. The Court took the matter under advisement. Following the hearing, the Court entered an Order

1

on February 12, 2013, referring the matter to mediation. Jacqueline R. Clare conducted the mediation on March 11, 2013, in Wilson, North Carolina, which resulted in an impasse.

## BACKGROUND

Oteria Q. Moses ("Plaintiff") entered into a consumer loan agreement with Western Sky Financial, LLC, ("Western Sky") on May 10, 2012, for a loan in the amount of $1,500.00. Western Sky, a South Dakota company in the business of making short-term consumer loans, assigned Plaintiff's loan to Defendant. The terms of the assigned loan provide that the loan is subject solely to the laws and jurisdiction of the Cheyenne River Sioux Tribe of the Cheyenne River Indian Reservation. The loan further states that the borrower consents to the Cheyenne River Sioux Tribal Court's sole subject matter and personal jurisdiction over any disputes. The loan agreement also provides that any dispute will be resolved by arbitration conducted by the Cheyenne River Sioux Tribal Nation. The loan provisions define a dispute as any controversy or claim between the borrower and Western Sky or any holder or servicer of the loan.

Plaintiff filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on August 1, 2012. Defendant subsequently filed its proof of claim in the amount of $1,929.02 on August 8, 2012, with respect to its assigned loan. In response to Defendant's proof of claim, Plaintiff filed this adversary proceeding on August 17, 2012. In the complaint, Plaintiff seeks both a declaratory judgment, which voids the loan debt owed, as well as actual and statutory damages for unlawful attempts by Defendant to collect on its debt. Plaintiff bases its prayer for relief on Defendant's purported violation of state law, specifically the North Carolina Consumer Finance Act, N.C. Gen. Stat. §§ 53-164 et seq., and Prohibited Acts by Debt Collectors, N.C. Gen. Stat. §§ 75-50 et seq.

In response to the complaint filed in this adversary proceeding, Defendant sought leave of

2

the Court to withdraw its proof of claim on November 13, 2012. Pursuant to Fed. R. Bankr. P. 3006, Defendant required leave of the Court to withdraw its claim since Plaintiff filed the adversary proceeding objecting to the proof of claim and seeking additional relief. The Court entered an Order Denying Motion to Withdraw Claim on January 3, 2013. Defendant subsequently appealed to the district court on January 17, 2013, by filing its Notice of Appeal, together with a Motion for Leave to Appeal in the respective bankruptcy case.

Defendant also filed a Motion to Dismiss the adversary proceeding on November 13, 2012. In the Motion, Defendant requested the adversary proceeding be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (6), made applicable to adversary proceedings through Fed. R. Bankr. P. 7012(b). Alternatively, Defendant sought to stay the proceeding and send the matter to arbitration. Plaintiff, by contrast, argued the Bankruptcy Court maintained jurisdiction to hear the merits of the complaint since it presented issues core to Plaintiff's corresponding bankruptcy case. In the Order entered January 3, 2013, this Court denied Defendant's Motion to Dismiss in light of the Supreme Court's holding in *Stern v. Marshall*, __ U.S. __, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). This Court ruled it possessed the constitutional authority pursuant to *Stern* to adjudicate the merits of Plaintiff's declaratory judgment claim. Additionally, the ruling articulated that, although it did not have constitutional authority to enter final judgment on Plaintiff's second cause of action, findings of fact and conclusions of law would be submitted to the District Court. On January 17, 2013, Defendant filed its Notice of Appeal with respect to the Court's January 3 Order Denying Motion to Dismiss.

In the present Motion, Defendant asks the Court to stay the adversary proceeding in its entirety pending the District Court's ruling on Defendant's two appeals. Defendant argues that the Federal Arbitration Act ("FAA"), particularly section 16(a)(1)(A), requires the Court to stay

3

all proceedings related to Plaintiff's state law claim until the matter is resolved on appeal. Def.'s Mem. 4.[1]

## DISCUSSION

Defendant argues that its appeal of the Court's Order denying the motion to submit the matter to arbitration pursuant to the FAA divests the Court of jurisdiction over Plaintiff's prayer for relief. Defendant states further that it is thereby entitled to a total stay of the proceeding until the appellate court renders a decision. Defendant cites efficiency and cost-savings as a basis for its motion to stay. This Court disagrees and believes the reasons for denying Defendant's previous motion to stay pending arbitration form the same backdrop for denying its present motion to stay pending appeal.

The policy surrounding arbitration is without question partly to facilitate efficiency and to streamline a court's docket. *See Prudential Sec. Inc. v. LaPlant*, 829 F.Supp. 1239, 1242 (D. Kan. 1993) (emphasizing that arbitration is meant in part "to encourage efficient and speedy resolution of disputes"). However, in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985), the Supreme Court underscored that the policy behind the FAA was primarily "to ensure judicial enforcement of privately made agreements to arbitrate." *Id.* at 219. The Court continued by underscoring the Congressional policy goals behind drafting the FAA:

> The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation, *at least absent a countervailing policy manifested in another federal statute*.

*Id.* (emphasis added). In sum, the upholding of arbitration agreements centers primarily on a

---

[1] No motion to stay was filed in Plaintiff's respective bankruptcy case, only in the adversary proceeding. The Court will assume Defendant is not seeking to stay Plaintiff's bankruptcy case while the issues surrounding this proof of claim are on appeal.

4

policy favoring enforcement of contractual provisions between assenting parties.

When "countervailing" federal law forms a foundation for the underlying dispute, the analysis shifts. *In re Nat'l Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997), illustrates the point. In that instance, National Gypsum sold products containing asbestos and was subsequently named a defendant in multiple suits concerning personal injury claims. To defend the massive litigation, National Gypsum entered into an agreement with a number of other asbestos product producers and insurers. One of National Gypsum's insurers, INA, purportedly advanced funds into a trust pursuant to the agreement. National Gypsum filed its voluntary petition for Chapter 11 five years later. As part of its confirmed plan, National Gypsum assumed the agreement. INA later demanded payment of monies it claimed it advanced to the trust on National Gypsum's behalf, and National Gypsum filed an adversary proceeding to resolve the matter. INA moved to stay the matter pending arbitration, and the bankruptcy court refused.

On appeal, both the district and circuit courts affirmed based on the countervailing principles inherent in the Bankruptcy Code. The Fifth Circuit Court of Appeals stated on the one hand that "not all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." *Id.* at 1067. The court went on to discuss that simply because a proceeding is "core" to the corresponding bankruptcy case does not provide *a priori* jurisdictional grounds for hearing the case and refusing to send the matter to arbitration. On the other hand, the court highlighted the distinction "between actions derived from the debtor, and therefore subject to the arbitration agreement, and bankruptcy actions in essence created by the Bankruptcy Code for the benefit ultimately of creditors of the estate, and therefore not encompassed by the arbitration agreement." *Id.* at 1068 (citing *In re Statewide*

5

*Realty Co.*, 159 B.R. 719 (Bankr. D.N.J. 1993)). It is this second circumstance, i.e., "bankruptcy actions in essence created by the Bankruptcy Code," that concerns the question presently before this Court. *Id.*

Although the reasoning behind staying an adversary proceeding pending arbitration and staying an adversary proceeding pending an appeal emerge from a similar legal and factual analysis, case law surrounding the latter is relatively uncharted. In fact, the Fourth Circuit has articulated that "[o]ur court has not concluded whether a stay of the entire action is required pending appeal of an order denying a motion to compel arbitration or whether the filing of an interlocutory appeal divests the trial court of jurisdiction." *In re White Mountain Mining Co., LLC*, 403 F.3d 164, 171 (4th Cir. 2005). Among other circuits, however, there is an unresolved split of authority:

> The Ninth Circuit has held that an appeal from an order denying a motion to compel arbitration does not deprive the district court of jurisdiction over other proceedings in the case. The Court observed that either the district court or the court of appeals may—but is not required to—stay the proceedings upon determining that the appeal presents a substantial question. In contrast, the Seventh and Eleventh Circuits have held that a district court may not proceed after the filing of a nonfrivolous appeal from an order denying arbitration.

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 54 (2d Cir. 2004). The court in *Motorola* goes on to stress that an appeals court has never undone a trial court's ruling on the merits simply because the trial court "lacked jurisdiction to proceed after an appeal from an order denying arbitration." *Id.*

Additionally, Fed. R. Bankr. P. 8005 makes plain that the granting of a stay pending appeal is within the discretion of the bankruptcy court: "[T]he bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all

6

parties in interest." Case law supports this finding as well. *See In re Ward*, 184 B.R. 253, 255 (Bankr. D.S.C. 1995).

In the present case, the Court has determined in its Order dated January 3, 2013, that Plaintiff's declaratory judgment claim was in fact constitutionally core. The Court ruled it would hear the merits of that cause of action. Because a determination of the efficacy of the loan agreement at issue in this matter bears directly on the other creditors in Plaintiff's bankruptcy case, the Court believes a stay of the matter will unnecessarily hamper an efficient administration of Plaintiff's bankruptcy estate. Permitting a stay throughout a potentially protracted appeals process would only serve to upend the countervailing policy of the bankruptcy code with respect to all parties involved. This Court believes that pressing forward with an adjudication of the constitutionally core declaratory judgment claim—as well as formulating findings of fact and conclusions of law concerning Plaintiff's second, non-core damages claim—is ultimately in the best interests of the case.

It is worth noting that the Court views the assumptions in Defendant's Memorandum in support of their Motion as unfounded, namely that "the District Court is likely to hear the appeal on the Proof of Claim and order [its] withdrawal." Def.'s Mem. 4. There is no authority to suggest the Court's reasoning was flawed in its refusal to permit Defendant to withdraw its proof of claim once Plaintiff filed a complaint in response. Plaintiff's two-fold cause of action may very well have important ramifications with respect to creditors in her bankruptcy case. The Court believes, moreover, its position on this matter will in no way create "duplication of work" or "wasted resources" as Defendant portends. Def.'s Mem. 5. The Court's decision to move forward with the cause of action will, by contrast, provide a more efficient means of resolving the contested matter and, ultimately, the corresponding bankruptcy case. Lastly, the Court does

7

not agree that the proof of claim asserted against Plaintiff is a moot issue, as Defendant stresses. Defendant has simply not "offered the relief [Plaintiff] sought to obtain" with respect to the contested claim. Plaintiff, through her complaint, seeks more than a simple withdrawal of the claim at issue. She seeks both a judgment declaring the proof of claim void in its entirety and damages for violations of state law.

The Court would also emphasize that this adversary proceeding consists merely of an objection to claim, which is core and constitutionally authorized, and an ancillary cause of action for damages based largely on the same set of facts and circumstances as the objection to claim. Both issues can be easily and efficiently adjudicated in the bankruptcy court, which will submit proposed findings of fact and conclusions of law to the District Court. The simplicity of the pending matters and the concern for efficient administration of the bankruptcy case far outweigh any policy interests of requiring arbitration.

Therefore, based on the foregoing reasons, Defendant's Motion to Stay Pending Appeal is **DENIED**. The Clerk is directed to reschedule the preliminary pretrial conference in this matter.

**SO ORDERED**

**END OF DOCUMENT**