**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

No. 14-1195

————————————

OTERIA Q. MOSES,

                    Plaintiff - Appellee,

v.

CASHCALL, INC.,

                    Defendant - Appellant,

------------------------------

NATIONAL ASSOCIATION OF CHAPTER 13 TRUSTEES; NATIONAL
ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS,

               Amici Supporting Appellee.

————————————

Appeal from the United States District Court for the Eastern
District of North Carolina, at Greenville. Terrence W. Boyle,
District Judge. (4:13-cv-00223-BO)

————————————

Argued: October 30, 2014           Decided: March 16, 2015

————————————

Before NIEMEYER and GREGORY, Circuit Judges, and DAVIS, Senior
Circuit Judge.

————————————

Affirmed in part and reversed in part and remanded by per curiam
opinion. Judge Niemeyer wrote the opinion for the court in
Parts I, II.A, and III, in which Judge Gregory joined. Judge
Niemeyer wrote a separate opinion in Part II.B dissenting from
the judgment in part. Judge Gregory wrote a separate opinion,
concurring in the judgment. Judge Davis wrote a separate

opinion, concurring in the judgment in part and dissenting in part.

————————————

**ARGUED:** Hayden J. Silver, III, WOMBLE CARLYLE SANDRIDGE & RICE, LLP, Raleigh, North Carolina, for Appellant. Matthew W.H. Wessler, PUBLIC JUSTICE, P.C., Washington, D.C., for Appellee. **ON BRIEF:** Raymond M. Bennett, Jesse A. Schaefer, WOMBLE CARLYLE SANDRIDGE & RICE, LLP, Raleigh, North Carolina, for Appellant. Adrian M. Lapas, STRICKLAND, LAPAS, AGNER & ASSOCIATES, Goldsboro, North Carolina; Leah M. Nicholls, PUBLIC JUSTICE, P.C., Washington, D.C., for Appellee. John Fletcher Logan, Chapter 13 Standing Trustee, Eastern District of North Carolina, OFFICE OF THE CHAPTER 13 TRUSTEE, Raleigh, North Carolina, for Amicus National Association of Chapter 13 Trustees. Tara Twomey, Geoff Walsh, NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER, San Jose, California, for Amicus National Association of Consumer Bankruptcy Attorneys.

————————————

PER CURIAM:

This bankruptcy appeal presents the issue of whether two claims, one for declaratory relief and one for money damages, asserted by debtor Oteria Moses in an adversary proceeding, are subject to arbitration. The bankruptcy court retained jurisdiction over the first claim and denied the motion of CashCall, Inc. to compel arbitration. With respect to the second claim, it made recommended findings of fact and conclusions of law, likewise to retain jurisdiction over the claim and deny the motion to compel arbitration. On appeal from the bankruptcy court, the district court affirmed the bankruptcy court's denial of the motion to compel arbitration as to the first claim and, itself, denied the motion to compel arbitration with respect to the second claim.

On appeal, we hold, for the reasons given by Judge Niemeyer in Parts I, II.A, and III of his opinion, in which Judge Gregory joined, that the district court did not err in affirming the bankruptcy court's exercise of discretion to retain in bankruptcy Moses' first claim for declaratory relief. We also hold, however, that the district court erred in retaining in bankruptcy Moses' claim for damages under the North Carolina Debt Collection Act and denying CashCall's motion to compel arbitration of that claim. Judge Gregory and Judge Davis wrote

separate opinions concurring in that judgment. Judge Niemeyer wrote a separate opinion on that issue, dissenting.

Accordingly, the judgment of the district court is affirmed in part and reversed in part, and this matter is remanded to the district court with instructions to grant CashCall's motion to compel arbitration on Moses' second claim for damages.

<u>AFFIRMED IN PART, REVERSED IN PART,</u>
<u>AND REMANDED WITH INSTRUCTIONS</u>

NIEMEYER, Circuit Judge, writing for the court in Parts I, II.A, and III; and writing separately in Part II.B dissenting from the judgment in part:

To overcome financial difficulties, Oteria Moses of Goldsboro, North Carolina, borrowed $1,000 from Western Sky Financial, LLC, signing a consumer loan agreement in which she promised to repay Western Sky $1,500 and 149% interest, for an effective interest rate of 233.10% per annum. In signing the loan agreement, she agreed to make payments totaling $4,893.

While such a loan agreement was clearly illegal under North Carolina law, as it provided for an interest rate nearly 15 times the maximum allowable rate, Western Sky specified in the agreement that Indian tribal law would apply and that any dispute under the agreement would be resolved by arbitration conducted by a representative of the Cheyenne River Sioux Tribe.

When Moses sought protection in a Chapter 13 bankruptcy proceeding, CashCall, Inc., the loan servicer, filed a proof of claim, which Moses opposed on the ground that the loan was illegal and void. Moses also filed an adversary proceeding against CashCall (1) to declare the loan illegal and void and (2) to obtain damages for CashCall's allegedly illegal debt collection activities. In a strategic attempt to avoid the bankruptcy court's adjudication of Moses' claims, CashCall sought to withdraw its proof of claim, but the bankruptcy court denied its request. CashCall simultaneously sought to dismiss

the adversary action or to stay the proceeding and compel arbitration, which the bankruptcy court also denied. The district court refused to review the bankruptcy court's interlocutory order denying CashCall's motion to withdraw its proof of claim but agreed to review the bankruptcy court's order denying CashCall's motion to dismiss or compel arbitration. From the district court's order affirming, CashCall filed this appeal.

We conclude that resolution of Moses' claim for a declaratory judgment that the loan is illegal under North Carolina law could directly impact the claims against her estate and that sending this claim to tribal arbitration would substantially interfere with Moses' efforts to reorganize. Thus, we hold that the district court did not err in affirming the bankruptcy's court's exercise of discretion to retain in bankruptcy Moses' claim for a declaratory judgment.

Writing separately for myself in Part II.B, I would also affirm the district court's exercise of discretion to retain in bankruptcy Moses' claim to obtain damages for CashCall's efforts to collect an allegedly illegal debt. That claim presents the exact same question as Moses' claim for a declaratory judgment -- namely, whether the loan agreement is invalid. Consequently, splitting the damages claim from the declaratory judgment claim and sending it to arbitration will be extremely inefficient,

will present collateral estoppel concerns, and will waste
resources that Moses could otherwise use to repay her debts.
Such concerns are heightened in light of the fact that courts
have called the tribal arbitration procedure specified in the
loan agreement "illusory," "a sham," and "unconscionable." <u>See,
e.g.</u>, <u>Jackson v. Payday Fin., LLC</u>, 764 F.3d 765, 768, 778-79
(7th Cir. 2014).  Therefore, I believe that the district court
did not abuse its discretion in declining to send Moses' damages
claim to arbitration.

I

Facing financial difficulties, Moses signed a Western Sky
Consumer Loan Agreement (the "Loan Agreement") on May 10, 2012,
promising to pay Western Sky "or any subsequent holder" $1,500,
together with 149% interest.  Upon signing the Loan Agreement,
Western Sky gave her $1,000 in cash and "retained" $500 as a
"prepaid finance charge/origination fee."  In the Loan
Agreement's "Truth in Lending Act Disclosure Statement," Western
Sky stated that the annual percentage rate for the loan was
233.10% and that the amount of all payments that would be made
"as scheduled" would be $4,893.14.  The 233.10% interest rate
disclosed in the Loan Agreement far exceeded the 16% maximum
rate allowed by North Carolina law.

Western Sky, which gave its address in the Loan Agreement
as a post office box in Timber Lake, South Dakota, was not

7

licensed to make loans in North Carolina, as required by North Carolina law. The Loan Agreement provided, however, that it was "governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe" and that "no United States state or federal law applies to this Agreement."

The Loan Agreement also provided that any disputes relating to it were to be resolved by arbitration, "which <u>shall</u> be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative" (emphasis added), and it gave Moses the right to designate either the American Arbitration Association or JAMS "to administer the arbitration" in accordance with its rules and procedures "to the extent that those rules and procedures do not contradict either the law of the Cheyenne River Sioux Tribe or the express terms of this Agreement to arbitrate." In signing the Agreement, Moses also agreed that she could elect to have the arbitration take place either on tribal land or within 30 miles of her residence, but she agreed that if she elected the latter, this "accommodation" would not "relinquish[] or waive[] . . . the Cheyenne River Sioux Tribe's sovereign status or immunity." Courts that have considered loan agreements similar to the one at issue here have found that the Cheyenne River Sioux Tribe has no laws or facilities for arbitration and that the arbitration procedure

8

specified is a "sham from stem to stern." <u>Jackson</u>, 768 F.3d at 779; <u>see also</u> <u>Inetianbor v. CashCall, Inc.</u>, 768 F.3d 1346, 1354 (11th Cir. 2014); <u>Heldt v. Payday Fin., LLC</u>, 12 F. Supp. 3d 1170, 1191 (D.S.D. 2014).

Three days after signing the Loan Agreement, Moses received a notice from Western Sky that the Agreement had been sold to WS Funding, LLC, a subsidiary of CashCall, Inc., and would be serviced by CashCall.

On August 1, 2012, less than three months after signing the Loan Agreement and after having made only one payment on it, Moses filed a Chapter 13 bankruptcy petition in the Eastern District of North Carolina to reorganize her financial affairs. One week later, CashCall filed a proof of claim in the bankruptcy proceeding, asserting that Moses owed it $1,929.02 as of August 1. Moses objected to the proof of claim, contending that "the loan obligation was void and not enforceable in North Carolina" pursuant to two North Carolina statutes that prohibit unlicensed lending, <u>see</u> N.C. Gen. Stat. § 53-166(a), and limit interest rates to 16% per annum, <u>see</u> <u>id.</u> § 24-1.1(c). She also initiated an adversary proceeding by filing a two-count complaint seeking, in her first count, a declaratory judgment that the loan was "void <u>ab initio</u>" under North Carolina law and, in her second, damages against CashCall under the North Carolina

9

Debt Collection Act, id. §§ 75-50 to 75-56, for taking actions "to collect a debt that was not permitted under law."

On October 25, 2012, the bankruptcy court confirmed Moses' Chapter 13 plan without objection. The approved plan called for Moses to repay fully all secured, priority unsecured, and administrative claims over a five-year period but did not anticipate that there would be sufficient funds to repay any general unsecured claims.

After approval of the plan, but while the adversary proceeding was pending, CashCall filed simultaneous motions in the bankruptcy court to withdraw its proof of claim with prejudice and to dismiss Moses' adversary proceeding without prejudice or, in the alternative, to stay the proceeding and compel Moses to arbitrate her claims pursuant to the Loan Agreement's arbitration clause. In its motion to withdraw its proof of claim, CashCall stated that it "no longer wish[ed] to pursue its Proof of Claim and voluntarily abandon[ed] its claim for the outstanding balance of the loan to the Debtor." But it did not consent to a finding that its loan was illegal and void under North Carolina law, as Moses alleged in her objection to the proof of claim and in her complaint in the adversary proceeding. Because Moses had already filed an adversary proceeding against CashCall, CashCall was not authorized to withdraw its proof of claim without court approval. See Fed. R.

10

Bankr. P. 3006.  Moses objected to CashCall's motion to withdraw
its proof of claim, maintaining that CashCall, which had filed
118 similar proofs of claim in the Eastern District of North
Carolina to recover unsecured debts, sought to withdraw its
proof of claim in her case only after she had challenged its
practices "in an attempt to divest [the bankruptcy court] of
jurisdiction" to hear her claims against it.

Following a hearing, the bankruptcy court entered two
separate orders dated January 3, 2013.  In the first, it denied
CashCall's motion to dismiss the complaint or to stay and compel
arbitration.  In doing so, the court concluded that Moses' first
claim in the complaint, which requested a declaratory judgment
that CashCall's loan was void, was a core bankruptcy proceeding,
as it involved the "allowance or disallowance of claims against
the estate," citing 28 U.S.C. § 157(b)(2)(B).  As to Moses'
second claim, which sought damages under the North Carolina Debt
Collection Act, the court concluded that the claim was non-core,
over which it "lack[ed] constitutional authority to enter final
judgment" and could therefore only recommend findings of fact
and conclusions of law for a decision by the district court,
citing id. § 157(c)(1).  In the second order of January 3, the
bankruptcy court denied CashCall's motion to withdraw its proof
of claim, finding that withdrawal "would cause prejudice to the

Debtor by eliminating this Court's jurisdiction over any causes of action related to the claim."

CashCall sought leave from the district court to file interlocutory appeals with respect to both January 3 orders, as required by 28 U.S.C. § 158(a)(3), acknowledging that the district court had "discretionary jurisdiction to hear appeals from interlocutory rulings of the Bankruptcy Courts." The district court granted CashCall leave to appeal the interlocutory order denying its motion to dismiss or compel arbitration, but it denied CashCall leave to appeal the interlocutory order denying its motion to withdraw its proof of claim. On the appeal of the order denying CashCall's motion to dismiss or compel arbitration, the district court affirmed the bankruptcy court's order by order dated February 4, 2014.

CashCall filed a notice of appeal to this court "from the judgment and order of the District Court . . . entered in this case on February 4, 2014, affirming an order of the Bankruptcy Court for the Eastern District of North Carolina that denied CashCall's motion to dismiss or stay and compel arbitration of the underlying adversary proceeding."

## II

In her complaint in the adversary proceeding, Moses asserted two claims for relief. In the first, she sought a declaratory judgment that CashCall's loan was illegal and

unenforceable, in violation of N.C. Gen. Stat. § 24-1.1(c) and § 53-166(a). In her second claim, she sought damages for CashCall's alleged violation of the North Carolina Debt Collection Act, N.C. Gen. Stat. §§ 75-51, 75-54, asserting that CashCall sought to enforce a debt that was void under North Carolina law.

The district court ruled that the bankruptcy court had jurisdiction over Moses' first claim because it was "constitutionally core under Stern v. Marshall, 131 S. Ct. 2594 (2011)," and "CashCall [did] not challenge this finding." The district court then exercised its discretion to keep Moses' second claim -- that CashCall violated the North Carolina Debt Collection Act -- in the bankruptcy case because sending it to arbitration "would frustrate, rather than facilitate, the efficiency favored by arbitration and could potentially lead to inconsistent results." The court noted that "[t]he countervailing policy of the bankruptcy code is . . . greatly served by allowing the bankruptcy court to consider both claims together and to enter findings of fact and conclusions of law on Moses' non-core claim."

CashCall challenges the district court's conclusions, contending on appeal that both the core and non-core claims should be sent to arbitration. This is an expansion of the position that it took in the district court, where it argued

13

only that Moses' claim for damages under the North Carolina Debt
Collection Act was a non-core proceeding and that "non-core
proceedings are subject to arbitration, even in bankruptcy."  It
now maintains that if both claims are sent to arbitration, "none
of the matters to be decided will delay or diminish [Moses']
opportunity for a discharge, alter the Chapter 13 Plan, or
increase the payments she is required to make."  Thus, it
argues, arbitration would not conflict with the policies
underlying the Bankruptcy Code.

Moses argues to the contrary, noting that both of her
claims are premised on the invalidity of the Loan Agreement and
contending that the resolution of those claims would "directly
impact[] the claims on the estate and the plan for [her]
financial reorganization -- the raison d'etre of Chapter 13
bankruptcy proceedings."  She maintains therefore that
arbitration would conflict with the Bankruptcy Code's purposes.

The underlying principles that are applicable here are not
in dispute.  Bankruptcy courts may decide core bankruptcy
claims, which include the "allowance or disallowance of claims
against the estate" and "counterclaims by the estate against
persons filing claims against the estate."  28 U.S.C.
§ 157(b)(2)(B)-(C).  A bankruptcy court may also hear related
non-core claims, but it cannot finally resolve them and must

instead submit proposed findings of fact and conclusions of law to the district court. Id. § 157(c)(1).

The Supreme Court has modified these statutory assignments of responsibility, holding that Article III of the Constitution prohibits bankruptcy courts from issuing final orders regarding statutorily core claims unless they "stem[] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." Stern, 131 S. Ct. at 2618. And the Court has subsequently held that when a bankruptcy court is faced with a claim that is statutorily core but constitutionally non-core -- a so-called "Stern claim" -- it must treat the claim as if it were statutorily non-core, submitting proposed findings of fact and conclusions of law to the district court for de novo review. Exec. Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2173 (2014).

Here, there is no dispute that Moses' first claim, which seeks to declare that CashCall's loan is unenforceable, is a statutorily core claim because such an action involves the "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(B). It is also constitutionally core, because the validity of the Loan Agreement would "necessarily be resolved" in adjudicating CashCall's proof of claim and Moses' objections thereto. Stern, 131 S. Ct. at 2618; see also, e.g., TP, Inc. v. Bank of Am., N.A. (In re TP, Inc.), 479 B.R. 373,

385 (Bankr. E.D.N.C. 2012) (holding that "a counterclaim by the estate based in state law" will necessarily be resolved in ruling on a proof of claim if it "seek[s] to directly reduce or recoup the amount claimed"); Pulaski v. Dakota Fin., LLC (In re Pulaski), 475 B.R. 681, 687 (Bankr. W.D. Wis. 2012) (holding that an objection to a proof of claim based on violations of state law was constitutionally core); In re Olde Prairie Block Owner, LLC, 457 B.R. 692, 698 (Bankr. N.D. Ill. 2011).

Moses' second claim, which seeks damages for CashCall's violation of the North Carolina Debt Collection Act, is also statutorily core because it is a "counterclaim[] by the estate against [a] person[] filing [a] claim[] against the estate." See 28 U.S.C. § 157(b)(2)(C); see also, e.g., Burns v. Dennis (In re Southeast Materials, Inc.), 467 B.R. 337, 360 (Bankr. M.D.N.C. 2012) (holding that a cause of action seeking damages for a creditor's unfair or deceptive trade practices, which had no bearing on the allowance or disallowance of a proof of claim, was a counterclaim by the estate); SJI, Inc. v. Staehnke (In re SJI, Inc.), 442 B.R. 690, 693 (Bankr. D. Minn. 2010) (holding that a cause of action seeking damages for a creditor's breach of contract was a counterclaim by the estate). But the second claim is not constitutionally core. Even if a bankruptcy court were to determine that the underlying Loan Agreement was illegal, it would still need to determine whether an effort to

16

collect an illegal debt would inherently violate the North Carolina Debt Collection Act, as Moses alleges. Thus, Moses' claim would not "necessarily be resolved in the claims allowance process." Stern, 131 S. Ct. at 2618; see also id. at 2616-17 (distinguishing the case before the Court, in which "the Bankruptcy Court was required to and did make several factual and legal determinations that were not 'disposed of in passing on objections' to [a] proof of claim," id. at 2617 (quoting Katchen v. Landy, 382 U.S. 323, 332 n.9 (1966)), from a case where the legal elements of the claim and counterclaim were so overlapping that once the bankruptcy judge ruled on the creditor's proof of claim "nothing remain[ed] for adjudication," id. at 2616 (quoting Katchen, 382 U.S. at 334) (internal quotation marks omitted)). Therefore, Moses' second claim must be treated as if it were statutorily non-core. See Exec. Benefits Ins. Agency, 134 S. Ct. at 2173.

In sum, while the two claims in Moses' complaint in the adversary proceeding are statutorily core claims, only the first claim is constitutionally core.

CashCall's argument that both Moses' core and non-core claims should be sent to arbitration rests essentially on its argument that the strong policy favoring arbitration outweighs the conflicting policies of the Bankruptcy Code in this case.

To be sure, the arbitration policies implemented by the
Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, are to be
robustly followed.  See, e.g., CompuCredit Corp. v. Greenwood,
132 S. Ct. 665, 669 (2012) ("[The FAA] establishes 'a liberal
federal policy favoring arbitration agreements'" (quoting
Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,
24 (1983))); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213,
221 (1985) ("The preeminent concern of Congress in passing the
[FAA] was to enforce private agreements into which parties had
entered, and that concern requires that we rigorously enforce
agreements to arbitrate . . .").  At the same time, however,
"Congress intended to grant comprehensive jurisdiction to
bankruptcy courts so that they might deal efficiently and
expeditiously with all matters connected with the bankruptcy
estate."  Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995)
(internal quotation marks and citation omitted).  And in cases
where tension arises between the FAA and another statute, the
Supreme Court has provided a framework for resolving it, holding
that the party seeking to prevent enforcement of an applicable
arbitration agreement must show that "Congress has evinced an
intention to preclude a waiver of judicial remedies for the
statutory rights at issue."  Green Tree Fin. Corp. v. Randolph,
531 U.S. 79, 90 (2000).  That intent must be deducible from
(1) the statute's text; (2) its legislative history; or (3) "an

18

inherent conflict between arbitration and the statute's underlying purposes." Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987); see also Gilmer v. Interstate/Johnson Lane Corp., 895 F.2d 195, 197 (4th Cir. 1990), aff'd, 500 U.S. 20 (1991). Where such an intent can be deduced, the court of first impression has discretion to decide whether to withhold arbitration, a decision that is subject to review for abuse of that discretion. See Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011, 1019-20 (9th Cir. 2012); Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze), 434 F.3d 222, 228 (3d Cir. 2006); Gandy v. Gandy (In re Gandy), 299 F.3d 489, 494 (5th Cir. 2002). As to the constitutionally core claim in this case -- Moses' claim for a declaratory judgment -- the bankruptcy court is the court of first impression to exercise discretion whether to withhold arbitration, but as to the non-core claim -- Moses' claim for damages -- the district court is the court of first impression to exercise such discretion.

Moses does not contend that the Bankruptcy Code or its surrounding legislative history demonstrates an intent to create an exception to the FAA. Rather, she argues that sending her claims to arbitration would inherently conflict with the Bankruptcy Code's purposes. Because Moses' complaint contains

both a constitutionally core and a non-core claim, each claim is analyzed separately.

A

With respect to Moses' first claim, the constitutionally core claim, we conclude that sending it to arbitration would pose an inherent conflict with the Bankruptcy Code and that the district court did not err in affirming the bankruptcy court's exercise of discretion in retaining it in bankruptcy.

While arbitration agreements are to be rigorously enforced, bankruptcy too represents a fundamental public policy. Grounded in the Constitution, bankruptcy provides debtors with a fresh start and creditors with an equitable distribution of the debtor's assets. To those ends, a principal purpose of the Bankruptcy Code is to provide debtors and creditors with "the prompt and effectual administration and settlement of the [debtor's] estate." Katchen, 382 U.S. at 328; see also Celotex, 514 U.S. at 308. Similarly, a principal purpose of the Bankruptcy Code is also to centralize disputes over the debtor's assets and obligations in one forum, thus protecting both debtors and creditors from piecemeal litigation and conflicting judgments. See Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co.), 403 F.3d 164, 169-70 (4th Cir. 2005); A.H. Robbins Co. v. Piccinin, 788 F.2d 994, 998 (4th Cir. 1986). "Ease and centrality of administration are thus foundational

characteristics of bankruptcy law." French v. Liebmann (In re
French), 440 F.3d 145, 154-55 (4th Cir. 2006) (Wilkinson, J.,
concurring).

Inherently invoking these policies, Moses filed a
Chapter 13 petition under the Bankruptcy Code and a five-year
plan to reorganize her financial affairs, which the bankruptcy
court approved in October 2012. In any Chapter 13 plan, even
after the debtor proposes and the court approves a specific
schedule of payments over a period of years, the plan "remains
subject to modification for reasons including a debtor's
decreased ability to pay according to plan, as well as the
debtor's increased ability to pay," Carroll v. Logan, 735 F.3d
147, 151 (4th Cir. 2013), until the completion of plan payments,
Pliler v. Stearns, 747 F.3d 260, 266 (4th Cir. 2014).

It is thus apparent that resolution of Moses' claim that
the Loan Agreement she entered into with Western Sky was illegal
could directly impact claims against her estate and her plan for
financial reorganization, notwithstanding the fact that the plan
was confirmed in October 2012. If a tribunal were to hold that
CashCall's loan is valid, CashCall could petition the bankruptcy
court as an "allowed unsecured creditor" to share in Moses'
assets. See Murphy v. O'Donnell (In re Murphy), 474 F.3d 143,
148 (4th Cir. 2007) (noting that plan modification can be
initiated by "the debtor, the Chapter 13 trustee, or an allowed

unsecured creditor"). And the fact that unsecured creditors are currently anticipated to receive nothing under Moses' confirmed plan does not mean that they never will. See Pliler, 747 F.3d at 265 (noting that creditors may gain from a debtor's Chapter 13 reorganization "even if the debtor[] ha[s] zero or negative disposable income at the time of plan confirmation," because "Chapter 13 debtors can and do benefit from windfalls such as inheritances or other unforeseeable income after plan confirmation but before their Chapter 13 proceedings are closed"). Under these circumstances, ordering arbitration of a dispute that directly pertains to Moses' plan for reorganization would "substantially interfere with [her] efforts to reorganize." Phillips, 403 F.3d at 170; see also id. at 169 (holding that "[a]rbitration is inconsistent with [the Bankruptcy Code's policy of] centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights contingent upon an arbitrator's ruling rather than the ruling of the bankruptcy judge assigned to hear the debtor's case" (emphasis added) (internal quotation marks and citation omitted)).

Therefore, we conclude that forcing Moses to arbitrate her constitutionally core claim would inherently conflict with the purposes of the Bankruptcy Code and that the district court did not err in affirming the bankruptcy court's exercise of

discretion in denying CashCall's motion to dismiss or stay and compel arbitration of that claim.

NIEMEYER, Circuit Judge, writing separately and dissenting from the judgment in part in this Part II.B.

### B

Nevertheless, the majority concludes that the district court erred in declining to send Moses' non-core claim to arbitration. Judge Gregory concludes that Moses failed to meet her burden of showing that CashCall's statutory right to the enforcement of arbitration agreements should be trumped by adjudication of her non-core claim in a bankruptcy court and therefore that the bankruptcy court "ha[d] no discretion to refuse to arbitrate [the] non-core claim." Post, at 49. He insists that splitting Moses' core and non-core claims -- so that the bankruptcy court can adjudicate her core claim and a representative of the Cheyenne River Sioux Tribe can adjudicate her non-core claim -- would not substantially interfere with Moses's efforts to reorganize, despite the fact that the main element of Moses' non-core claim, the legality of the Loan Agreement, will necessarily be determined by the bankruptcy court in ruling on Moses' core claim and on her objection to CashCall's proof of claim. Writing separately, Judge Davis would hold that CashCall's abandonment of its proof of claim renders Moses' core claim moot and eliminates any justification

for retaining jurisdiction over Moses' non-core claim in the
bankruptcy proceedings, despite the fact that because we lack
jurisdiction to revisit the denial of CashCall's motion to
withdraw its proof of claim, as we hold in Part III, <u>post</u>,
at 34-45, the proof of claim remains to be decided by the
bankruptcy court.

I believe that splitting Moses' closely related claims and
sending Moses' non-core claim to a questionable and perhaps
illusory arbitration proceeding would inherently conflict with
the purposes of the Bankruptcy Code, and therefore I dissent
from the court's judgment insofar as it holds that the district
court abused its discretion in retaining jurisdiction over
Moses' non-core claim.

Even though non-core claims are ancillary to
reorganization, it is apparent that they can nonetheless affect
a debtor's efforts to reorganize and that sending non-core
claims to arbitration can, in given circumstances, interfere
with the debtor's chance to complete a fair and efficient
Chapter 13 reorganization.   Therefore, with core and non-core
claims alike, courts are required to inquire into the nature of
the claim and the facts of the specific bankruptcy to determine
whether enforcing arbitration would inherently conflict with the
purposes of the Bankruptcy Code.   <u>See</u> <u>Cont'l Ins.</u>, 671 F.3d
at 1021 ("[T]he core/non-core distinction, though relevant, is

24

not alone dispositive"); <u>Mintze</u>, 434 F.3d at 229 ("The core/non-core distinction does not . . . affect whether a bankruptcy court has the discretion to deny enforcement of an arbitration agreement"). In addition, when a court is presented with both a core claim and a non-core claim in a single adversary proceeding, the discretion to retain the non-core claim can depend on the strength of its relationship with the core claim.

Here, if a separate tribunal were to award Moses damages for CashCall's efforts to collect an illegal loan, the increase in Moses' ability to pay should accrue to the other unsecured creditors. <u>See</u> <u>Arnold v. Weast (In re Arnold)</u>, 869 F.2d 240, 243 (4th Cir. 1989) ("When a debtor's financial fortunes improve, the creditors should share some of the wealth"). But the many questions surrounding the Loan Agreement's arbitration procedure raise doubts that arbitration would conclude in time for Moses' creditors to seek modification of Moses' Chapter 13 plan so that they could share in any recovery.

The Loan Agreement provides that arbitration "shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules." It also provides that arbitration shall be administered by the American Arbitration Association, JAMS, or another organization agreed upon by the parties. Thus, before arbitration could even begin, litigation over the arbitration

procedure would seem likely. Accord Heldt, 12 F. Supp. 3d at 1191 (noting that because no party had identified an "'authorized representative' of the Cheyenne River Sioux Tribal Nation [who] is an arbitrator in the [American Arbitration Association] or JAMS system," the arbitration agreement left a "conundrum" as to who would perform the arbitration). In addition, courts reviewing Western Sky loan agreements with language similar to that in the Loan Agreement in this case have found that the Cheyenne River Sioux Tribe does not authorize arbitration and consequently has no authorized arbitrators or consumer dispute rules. See Jackson, 764 F.3d at 779 ("The arbitration clause here is void not simply because of a strong possibility of arbitrator bias, but because it provides that a decision is to be made under a process that is a sham from stem to stern"); Inetianbor, 768 F.3d at 1354 (similar); Heldt, 12 F. Supp. 3d at 1192 ("[T]he unique circumstances of this case could give rise to . . . [a] 'procedural nightmare' and [a] lack of 'orderly administration of justice'" (quoting Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845, 856 (1985))).

My colleagues suggest that the record is not sufficiently developed for us to make conclusions about the specified tribal arbitration. I submit, however, that we need not make findings on that issue. Rather, the doubt already expressed by other

courts about the legitimacy and adequacy of the Loan Agreement's
tribal arbitration mechanism indicates at the very least that
the issue will be the subject of additional litigation.  See
Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.
1989) ("[F]ederal courts, in appropriate circumstances, may take
notice of proceedings in other courts, . . . if those
proceedings have a direct relation to matters at issue"
(internal quotation marks and citation omitted)).  Thus, it
might be years before any resolution of Moses' non-core claim
can be obtained.  Indeed, it is not hard to imagine scenarios in
which an arbitral award would come after October 2017, when
Moses' Chapter 13 plan will have terminated, preventing Moses'
creditors from petitioning for plan modification.  Such delays
with respect to the determination of the validity of a claim
made against one of Moses' creditors will not only interfere
with the "the prompt and effectual administration and settlement
of the [debtor's] estate," a principal purpose of the Bankruptcy
Code, Katchen, 382 U.S. at 328, but also prejudice the rights of
creditors to share in any increase in Moses' estate.  In
addition, it hardly undermines the policy favoring arbitration
to deny arbitration where there are "no rules, guidelines, or
guarantees of fairness." Jackson, 764 F.3d at 779.

More importantly, Moses' non-core claim is directly tied to her core claim.[1] Moses alleges in her non-core claim that CashCall's efforts to collect the debt violated the North Carolina Debt Collection Act <u>because the underlying loan obligation was illegal</u>, the very issue presented by her core claim. Therefore, separating her two claims will force an arbitrator and the bankruptcy judge <u>separately</u> to decide the validity of the underlying debt. That scenario inherently conflicts with the purposes of the Bankruptcy Code for several reasons.

<u>First</u>, having two tribunals adjudicate the identical issue is inefficient. CashCall argues that efficiency concerns are not a valid basis for ignoring the FAA, noting that the Supreme Court has held that the FAA "requires district courts to compel arbitration of pendent arbitrable claims . . . even where the

---

[1] Judge Gregory argues that "[t]he non-core litigation will likely require detailed and time-consuming findings regarding CashCall's conduct in trying to collect on the loan," <u>post</u> at 54, noting that Moses' complaint alleges that CashCall "has willfully engaged in other and further violations" of the North Carolina Debt Collection Act, "as may be shown through discovery and proved at trial." But the <u>only</u> factual claims that Moses makes in support of damages are that CashCall "threaten[ed] to draft funds from [her] account <u>on a loan obligation that was illegal</u>"; that CashCall "ma[de] telephone calls and threaten[ed] to take other actions <u>to collect a debt that was not permitted under law</u>"; and that CashCall "deceptively represent[ed] . . . that the alleged debt owing was a valid debt <u>when such 'contract for loan' was . . . void ab initio</u>." (Emphasis added).

28

result would be the possibly inefficient maintenance of separate
proceedings in different forums," because the FAA is not chiefly
concerned with "promot[ing] the expeditious resolution of
claims," Dean Witter Reynolds, 470 U.S. at 217, 219 (emphasis
added); see also KPMG LLP v. Cocchi, 132 S. Ct. 23, 26 (2011)
(per curiam) (similar).   While this analysis governs in other
contexts, intervening concerns of bankruptcy change the analysis
here, because the Supreme Court's McMahon framework directs
courts to consider whether there is an "inherent conflict
between arbitration and the statute's underlying purposes,"
482 U.S. at 227, and the "expeditious resolution of claims" is
at the heart of the Bankruptcy Code.   Thus, as other courts of
appeals have recognized, the arbitration calculus is different
when bankruptcy is involved, requiring courts to consider
efficiency concerns.   See Ins. Co. of N. Am., 118 F.3d at 1069
n.21 ("[I]nsofar as efficiency concerns might present a genuine
conflict between the Federal Arbitration Act and the
[Bankruptcy] Code -- for example where substantial arbitration
costs or severe delays would prejudice the rights of creditors
or the ability of a debtor to reorganize -- they may well
represent legitimate considerations"); Cont'l Ins., 671 F.3d
at 1023 n.9 (observing that the general proposition that
"judicial economy and centralization of disputes are not
sufficient bases for nonenforcement of an otherwise applicable

arbitration clause . . . does not hold in the bankruptcy context"); Gandy, 299 F.3d at 499 ("[E]fficiency concerns may be legitimate considerations in the bankruptcy context, where efficient resolution of claims and conservation of the bankruptcy estate assets are integral purposes of the Bankruptcy Code" (citing Ins. Co. of N. Am., 118 F.3d at 1069 n.21)). In sum, while efficiency is not considered in determining whether to withhold arbitration in other contexts, it is relevant where, as here, the Bankruptcy Code is involved. Accord Ackerman v. Eber (In re Eber), 687 F.3d 1123, 1131 (9th Cir. 2012) (distinguishing KPMG because it "was not a bankruptcy case"). To be sure, the efficiency from "centralization [may] not, in and of itself, [be] a valid reason to deny arbitration," as Judge Gregory observes, post, at 56, but where, as here, decentralization would be particularly inefficient, an arbitration agreement should give way.

Second, bifurcating Moses' claims will inherently conflict with the purposes of the Bankruptcy Code because an arbitration proceeding could come to a judgment before the bankruptcy court ruling and inappropriately bind the bankruptcy court on the validity of CashCall's Loan Agreement, a constitutionally core issue for the bankruptcy court to decide. See Phillips, 403 F.3d at 169 ("[P]ermitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an

arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case" (quoting Note, Jurisdiction in Bankruptcy Proceedings: A Test Case for Implied Repeal of the Federal Arbitration Act, 117 Harv. L. Rev. 2296, 2307 (2004))); Ackerman, 687 F.3d at 1131 ("We find unpersuasive [the creditors'] argument that the bankruptcy court inappropriately denied them the opportunity to arbitrate because it was concerned about being collaterally stopped by the arbitrator's decision"). And even if collateral estoppel were not to apply, bifurcation "could yield different results and subject parties to dichotomous obligations." Gandy, 299 F.3d at 499. Judge Gregory's suggestion that the district court could stay arbitration until it has ruled on Moses' core claim, post, at 55, only highlights further the inefficiencies associated with bifurcating Moses' claims.

Third, the additional litigation costs inherent in being forced to litigate claims before two separate tribunals will harm Moses' creditors by reducing the amount of income that Moses has available to pay her debts. See Phillips, 403 F.3d at 170 (holding that "ordering arbitration and staying the adversary proceeding would substantially interfere with White Mountain's efforts to reorganize" because arbitration would "impose additional costs on the estate and divert the attention and time of the debtor[]," whereas "allowing the adversary

31

proceeding to go forward would 'allow all creditors, owners and
parties in interest to participate [in a centralized proceeding]
at a minimum of cost'" (second alteration in original)); see
also Kent L. Richland, Stern v. Marshall:  A Dead End Marathon?,
28 Emory Bankr. Dev. J. 393, 413 (2012) ("Particularly where the
bankruptcy estate is relatively small, keeping the entire matter
in the bankruptcy court may be the only way to preserve the
estate against excessive costs").

Moreover, at a more general level, courts have regularly
refused to bifurcate related core and non-core matters.  In
Gandy, the debtor initiated an adversary proceeding alleging
causes of action created by the Bankruptcy Code as well as
state-law causes of action for breach of fiduciary duty,
negligence, fraud, constructive trust, and breach of contract.
The Fifth Circuit affirmed the district court's refusal to
divide the debtor's case by sending some claims to arbitration
because "[p]arallel proceedings would be wasteful and
inefficient, and potentially could yield different results and
subject parties to dichotomous obligations."  Gandy, 299 F.3d
at 499.[2]  Similarly, in Ackerman, the Ninth Circuit refused to

---

[2] Judge Gregory argues that Gandy is distinguishable because
the state-law claims in that case were "peripheral" or
"inconsequential relative to the bankruptcy causes of action."
299 F.3d at 497, 500.  But the facts of this case are no
different.  Here, at the heart of Moses' non-core claim is her

compel arbitration of a creditor's claims for breach of contract, fraud, and breach of fiduciary duty because "allowing an arbitrator to decide issues that are so closely intertwined" with the creditor's core claim that the underlying debt was not dischargeable "would 'conflict with the underlying purposes of the Bankruptcy Code.'" 687 F.3d at 1130-31 (quoting <u>Cont'l Ins.</u>, 671 F.3d at 1021). And in <u>Continental Insurance</u>, the Ninth Circuit held that because a creditor's non-core breach of contract claim challenging actions that the debtor took in bankruptcy was "inextricably intertwined" with the debtor's bankruptcy plan confirmation, "adjudication of [the creditor's] claim in any other forum other than a bankruptcy court would conflict with 'fundamental bankruptcy policy.'" 671 F.3d at 1022 (internal quotation marks omitted).

At bottom, I simply cannot see how the district court abused its discretion by keeping Moses' non-core claim together

---

allegation that the underlying loan agreement is unenforceable. If the district court agrees with that allegation, it need only resolve one simple legal question: Does the effort to collect an illegal debt inherently violate the North Carolina Debt Collection Act? If the answer to that question is yes, Moses is entitled to monetary damages, and her creditors are entitled to share in her newfound wealth. If the answer is no, Moses' non-core claim must fail, because Moses has pleaded <u>no</u> facts suggesting that CashCall's debt collection practices were otherwise unfair, deceptive, coercive, or unlawful. Thus, as in <u>Gandy</u>, a core bankruptcy matter -- here, the validity of loan agreement -- predominates.

with the core claim for adjudication in the bankruptcy court in
the circumstances of this case.  I would therefore affirm.


NIEMEYER, Circuit Judge, writing for the court:

III

To support his argument that the district court erred in
keeping the related core and non-core claims in bankruptcy,
Judge Davis, in his separate opinion concurring in the judgment
in part and dissenting in part, would have us review the
unappealed and unappealable interlocutory January 3, 2013 order
issued by the bankruptcy court denying CashCall's motion to
withdraw its proof of claim.  He finds this approach necessary
in order to conclude that the district court erred in affirming
the bankruptcy court's order denying the motion to dismiss or
compel arbitration because, as he reasons, "once CashCall
abandons its proof of claim and releases Moses from her
obligations under the loan agreement, the sine qua non of the
bankruptcy court's justification for retaining jurisdiction over
Moses's non-core claim evaporates; there is no core claim to
remit to arbitration, and the only question is whether to compel
arbitration on Moses's non-core claim."  Post, at 68.  But the
only issue that CashCall has appealed -- and, indeed, that it
could appeal -- is whether the district court erred in entering
its order of February 4, 2014, affirming the bankruptcy court's

34

ruling that the related core and non-core claims be decided together in the bankruptcy court and, to that end, denying CashCall's motion to dismiss or compel arbitration of those claims.  This is also the only issue that the parties briefed. Because we have no jurisdiction to review the bankruptcy court's January 3 order and therefore no power to allow CashCall to withdraw its proof of claim, Moses' core claim is not moot.

In bankruptcy cases, courts of appeals have jurisdiction only over (1) "final decisions, judgments, orders, and decrees" of district courts, pursuant to 28 U.S.C. § 158(d)(1); (2) interlocutory appeals from district courts under the collateral-order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949); (3) appeals from interlocutory or final orders of the bankruptcy court in which the bankruptcy court, the district court, or the parties acting jointly, certify an appeal and the court of appeals authorizes a direct appeal, pursuant to § 158(d)(2); and (4) interlocutory appeals in which a district court states in writing "[i] that an order not otherwise appealable . . . involves a controlling question of law as to which there is substantial ground for difference of opinion and [ii] that an immediate appeal from the order may materially advance the ultimate determination of the litigation," 28 U.S.C. § 1292(b).  See Legal Representatives for Future Claimants v. Aetna Cas. & Sur. Co. (In re Wallace & Gale

<u>Co.</u>), 72 F.3d 21, 24 (4th Cir. 1995).  In addition, Congress has created limited exceptions to the final-judgment rule for orders implicating certain subjects.    <u>See, e.g.</u>,  9  U.S.C. § 16(a)(1)(A).[3]

As CashCall itself recognized, the bankruptcy court's order denying its motion to withdraw its proof of claim was interlocutory.  Pursuant to § 158(a)(3), an interlocutory order of a bankruptcy court is reviewable by a district court only with that court's permission.  The district court here specifically denied CashCall permission to appeal the bankruptcy court's order to it and accordingly the district court never reviewed the bankruptcy court's order on the merits.  Thus, the

_____

[3]  To justify jurisdiction over an unappealed and unappealable order, Judge Davis relies on <u>Dart Cherokee Basin Operating Co., LLC v. Owens</u>, 135 S. Ct. 547 (2014).  That case, however, is inapposite.  There, after the Tenth Circuit declined to hear a discretionary appeal from an order denying a motion to remand a class action, the Supreme Court found no jurisdictional barrier to granting review of the denial of the leave-to-appeal application.  But unlike the closely circumscribed grounds for courts of appeals' jurisdiction in bankruptcy cases, the Supreme Court has jurisdiction to hear any "[c]ase[] in the courts of appeals." 28 U.S.C. § 1254(1).  As the Court explained, the leave-to-appeal application was at some point "in" the court of appeals, so the Supreme Court had jurisdiction over what the court of appeals did.  <u>Dart Cherokee Basin</u>, 135 S. Ct. at 555. Our jurisdiction is not so plenary.  Moreover, the Court emphasized not once, but twice, that neither party had questioned its jurisdiction and that it was addressing the issue only at the behest of an amicus curiae.  Here, by contrast, neither party believed that the bankruptcy court's order denying CashCall's motion to withdraw its proof of claim was before this court on appeal.

36

district court proceedings never gave rise to a reviewable final order of the district court that we could review under § 158(d)(1) or to an interlocutory order of the district court that we could review under the collateral-order doctrine or § 1292(b). And no court ever made a certification under § 158(d)(2). Indeed, CashCall has not suggested that the bankruptcy court's order is appealable under any possible formulation.

Moreover, even if there were any question as to our lack of jurisdiction over the order denying CashCall's motion to withdraw, CashCall did not appeal that order. A court of appeals only has jurisdiction over an order that has actually been appealed and presented to it. See Fed. R. App. P. 3-4; Smith v. Barry, 502 U.S. 244, 248 (1992) ("[Federal Rule of Appellate Procedure] 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review. . . . [N]oncompliance is fatal to an appeal."); cf. Bowles v. Russell, 551 U.S. 205, 214 (2007) ("[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement"). CashCall's notice of appeal did not even reference the bankruptcy court's January 3 order, instead carefully limiting the scope of the appeal to the district court's February 4 order:

> Defendant CashCall, Inc. appeals to the United States
> Court of Appeals for the Fourth Circuit from the
> <u>judgment and order</u> of the District Court for the
> Eastern District of North Carolina, <u>entered in this
> case on February 4, 2014</u>, affirming an order of the
> Bankruptcy Court for the Eastern District of North
> Carolina <u>that denied CashCall's motion to dismiss or
> stay and compel arbitration</u> of the underlying
> adversary proceeding.

(Emphasis added). And unsurprisingly, CashCall never addressed the merits of the bankruptcy court's January 3 order in its briefing before this court. <u>Cf.</u> <u>Bogart v. Chapell</u>, 396 F.3d 548, 555 (4th Cir. 2005) (recognizing that in order to demonstrate that the appellee "had notice of [an] issue and the opportunity to fully brief it," the appellant "needs to <u>address the merits</u> of a particular issue in her opening brief" (emphasis added)); <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (stating that failure to raise a claim and the reasons therefore in the opening brief "triggers abandonment of that claim on appeal").

Despite the clear absence of any power to review the interlocutory order of the bankruptcy court, Judge Davis would hold that the doctrine of pendent appellate jurisdiction gives us jurisdiction over that order. That doctrine, however, is not applicable to the circumstances presented here for several reasons.

<u>First</u>, there is no <u>final</u> judgment to which review of the bankruptcy court's order could be appended. In <u>Swint v.</u>

38

<u>Chambers County Commission</u>, 514 U.S. 35 (1995), the Supreme Court refused to apply the doctrine of pendent appellant jurisdiction to consider an unappealable issue where the order to which that issue would be appended was an <u>interlocutory</u> order appealable only under the collateral-order doctrine. The Court explained that "[i]f courts of appeals had discretion to append to a <u>Cohen</u>-authorized appeal from a collateral order further rulings of a kind neither independently appealable nor certified by the district court, then the two-tiered arrangement § 1292(b) mandates would be severely undermined." <u>Id.</u> at 47; <u>see also</u> <u>id.</u> at 49-50 ("[A] rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay <u>Cohen</u>-type collateral orders into multi-issue interlocutory appeal tickets"). To safeguard Congress' mandate, the <u>Swint</u> Court held that in appeals authorized by the collateral-order doctrine, courts only have jurisdiction to consider claims that "fall within <u>Cohen</u>'s collateral-order exception to the final-judgment rule." <u>Id.</u> at 49 (quoting <u>Abney v. United States</u>, 431 U.S. 651, 663 (1977)) (internal quotation marks omitted). Here, the district court's order affirming the denial of CashCall's motion to dismiss or compel arbitration was an interlocutory order, and appellate jurisdiction over that order was authorized solely by 9 U.S.C. § 16(a)(1)(A), which permits an <u>interlocutory</u> appeal of an order refusing to stay an action pending arbitration. <u>See</u>

Thomson McKinnon Sec., Inc. v. Salter, 873 F.2d 1397, 1399 (11th Cir. 1989) ("Under [§ 16(a)(1)], interlocutory orders refusing to compel arbitration now are appealable -- even though they are not final within the meaning of 28 U.S.C. § 1291"); see also, e.g., Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 550 (1st Cir. 2005); Arnold v. Arnold Corp. -- Printed Communc'ns for Bus., 920 F.2d 1269, 1274 (6th Cir. 1990). To apply the doctrine of pendent appellate jurisdiction in this context would be to sanction the conversion of a narrow, statutorily authorized interlocutory appeal into a full-blown appeal, precisely the effect that the Swint Court sought to avoid -- i.e., the practical and flexible approach to pendent appellate review that Judge Davis would have us adopt. See Swint, 514 U.S. at 45 (noting that such an approach would be incompatible with "the statutory instructions Congress has given to control the timing of appellate proceedings").

Second, the concerns expressed in Swint are magnified in this case because the district court, acting under 28 U.S.C. § 158(a)(3), specifically denied CashCall leave to appeal the bankruptcy court's interlocutory order to the district court. As the Second Circuit recognized in Gibson v. Kassover (In re Kassover), 343 F.3d 91, 95 (2d Cir. 2003), "[i]n requiring that a district court grant leave to appeal before rendering a decision on the merits [in § 158(a)(3)], Congress surely

40

intended to make the declining of such leave the end of the matter, save perhaps for the seeking of an extraordinary writ." Were it otherwise, appellate review would proceed "without the benefit of a district court's findings of fact and conclusions of law." Id. Indeed, courts of appeals have regularly held that they lack jurisdiction to review issues in the analogous situation where a district court has declined to certify a question for interlocutory appeal to a court of appeals under § 1292(b). See Taylor v. Robertson, 879 F.2d 863 (4th Cir. 1989) (unpublished) ("As the district court expressly declined to issue the required certification, we deny the petition for an interlocutory appeal under § 1292(b)"); see also, e.g., In re Ford Motor Co., 344 F.3d 648, 654 (7th Cir. 2003) ("Certification by the district court is a jurisdictional prerequisite to interlocutory review under § 1292(b) . . ."); Mason v. Stallings, 82 F.3d 1007, 1010 (11th Cir. 1996) ("The district court in this case denied a § 1292(b) certification. Therefore, it is not open to us to reverse the denial of summary judgment . . . ."); Green v. Occidental Petrol. Corp., 541 F.2d 1335, 1338 (9th Cir. 1976) ("Concurrence of both the district court and the appellate court is necessary and we are without power to assume unilaterally an appeal under section 1292(b)"); In re Master Key Antitrust Litig., 528 F.2d 5, 8 (2d Cir. 1975) ("[The district court's] refusal to certify the interlocutory

41

appeal of [its] rulings is, of course, not appealable . . ."); United States v. 687.30 Acres of Land, 451 F.2d 667, 670 (8th Cir. 1971) ("We have no jurisdiction to review the trial court's denial of the § 1292(b) certificate"). In short, applying pendent appellate jurisdiction -- "an exception [to the final-judgment requirement] of limited and narrow application," Rux v. Republic of Sudan, 461 F.3d 461, 475 (4th Cir. 2006) -- to review an issue that the district court expressly refused to consider itself under § 158(a)(3) and that was never certified to us under § 158(d)(2) or § 1292(b) would circumvent the clear intent of Congress.

Third, the bankruptcy court's January 3 interlocutory order is not, as Judge Davis contends, inextricably intertwined with the district court's February 4 order affirming the denial of CashCall's motion to dismiss the adversary complaint or compel arbitration. Although the doctrine of pendent appellate jurisdiction is available "when an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal," Rux, 461 F.3d at 475 (quoting Swint, 514 U.S. at 51), separate rulings are inextricably intertwined only if "the same specific question will underlie both the appealable and the non-appealable order," Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 111 (4th Cir. 2013) (emphasis added) (quoting Ealy v. Pinkerton Gov't Servs., Inc., 514 F. App'x

299, 309 (4th Cir. 2013) (per curiam)), cert. denied, 134 S. Ct. 2871 (2014). Here, CashCall's motion to dismiss or compel arbitration presents the question of whether arbitration of Moses' claim would substantially interfere with the purposes of the Bankruptcy Code. By contrast, review of CashCall's motion to withdraw its proof of claim would require a court to consider the distinct question of whether withdrawal would cause Moses to suffer prejudice.

Judge Davis, also recognizing that CashCall never included the bankruptcy court's January 3 interlocutory order in its notice of appeal, asserts nonetheless that we have "discretion" to review that order, post, at 62, because notices of appeal are to be liberally construed, post, at 69 (citing Powell v. Symons, 680 F.3d 301, 306 n.2 (3d Cir. 2012)). But this case does not allow for any construction of the notice of appeal. CashCall's notice of appeal was clear and explicit in limiting the appeal to the February 4 order. CashCall did not appeal the bankruptcy court's January 3 interlocutory order, stating in its brief that it "simply cannot appeal that issue yet." We cannot invoke the policy of liberal construction to create an entirely new document. That policy applies only when "a party files a notice of appeal 'that is technically at variance with the letter of a procedural rule, . . . [but] the litigant's action is the functional equivalent of what the rule requires.'" United

43

States v. Little, 392 F.3d 671, 681 (4th Cir. 2004) (quoting Torres v. Oakland Scavenger Co., 487 U.S. 312, 316–17 (1988)); see also Gunther v. E.I. du Pont de Nemours & Co., 255 F.2d 710, 717 (4th Cir. 1958) ("When it appears that adequate information is given by the notice, the appeal should not be dismissed for mistakes which do not mislead or prejudice the appellee").

Somehow reaching the merits of the bankruptcy court's unappealed and unappealable January 3 order, Judge Davis would conclude that the bankruptcy court abused its discretion in denying CashCall's motion to withdraw its proof of claim because, as he views it, Moses would not be prejudiced by the withdrawal. Post, at 64-65. He fails, however, to consider the more relevant equitable considerations presented to the bankruptcy court. For instance, CashCall issued a loan at nearly 15 times the maximum allowable interest rate under North Carolina law and then filed a proof of claim to collect Moses' unpaid debt, just as it had done in 118 other cases in the Eastern District of North Carolina. Had Moses not objected to CashCall's claim, CashCall would have been more than happy to use the federal courts to collect $1,929.02, which amounted to a 92.9% return on its investment over a period of less than three months. But as soon as Moses fought back, alleging that the Loan Agreement was issued in violation of state usury laws and seeking damages for CashCall's efforts to collect an illegal

44

debt, CashCall attempted to withdraw its proof of claim in an
effort to divest the bankruptcy court of jurisdiction and shunt
Moses' claims into tribal arbitration, causing additional costs
and delays.

CashCall's gamesmanship could not have been clearer.
Denying Moses the benefit of the bankruptcy forum and requiring
her, with her meager funds, to challenge the questionable and
perhaps even illusory tribal arbitration process and to try her
case in another forum, only to bring back any proceeds to the
bankruptcy court, would hardly serve equity. Bankruptcy courts
are courts of equity, see IRS v. Levy (In re Landbank Equity
Corp.), 973 F.2d 265, 271 (4th Cir. 1992), and as such, they
should not be required to give effect to this inequitable
practice. While Judge Davis states that he is not "blink[ing]"
at the underlying motivations of CashCall's transparently
tactical decision to withdraw its proof of claim in this case as
a means to pretermit the adversary proceeding, post, at 76, his
stated position reveals precisely the opposite.

At bottom, it is clear that the bankruptcy court's order
denying CashCall's motion to withdraw its proof of claim is not
before us and that the bankruptcy court still has jurisdiction
to decide CashCall's proof of claim and Moses' objection to it.

45

GREGORY, Circuit Judge, concurring in the majority opinion in part, and concurring in the judgment:

I agree with Judge Niemeyer's majority opinion upholding the bankruptcy court's exercise of jurisdiction over Moses' core claim for declaratory judgment.[1]  Sending such a claim to arbitration would indeed present an "inherent conflict" with the Bankruptcy Code insofar as the claim seeks to determine the validity of a demand on Moses' estate.  See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987) (allowing the non-enforcement of an arbitration agreement when the arbitration of a claim would present an "inherent conflict" with a "statute's underlying purposes").

The same, however, cannot be said for Moses' non-core claim, which demands money damages for CashCall's alleged violations of the North Carolina Debt Collection Act (NCDCA), NC. Gen. Stat. §§ 75-50 to 56 (2012).  Although the success or failure of the non-core claim may have ancillary effects on Moses' bankruptcy – primarily through the enlargement of the underlying estate due to any damages received – any such results are simply too attenuated, and indeed extrinsic to the bankruptcy, to constitute an "inherent conflict" with the

---

[1] I also join Part III of Judge Niemeyer's opinion holding that we have no jurisdiction to review the bankruptcy court's interlocutory order denying CashCall's motion to withdraw its proof of claim.

Bankruptcy Code's purpose of facilitating an efficient reorganization. As the bankruptcy judge himself observed regarding the non-core claim, "[t]hese damages are unrelated to the Defendant's proof of claim and are only related to the bankruptcy case in that if successful, the bankruptcy estate will recover any non-exempt funds and disburse them to claims in accordance with the bankruptcy code." J.A. 87. In such circumstances, Moses has failed to meet her burden of showing "that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." McMahon, 482 U.S. at 227; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) (observing that courts must "rigorously enforce agreements to arbitrate, . . . at least absent a countervailing policy manifested in another federal statute"); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (describing the "federal policy favoring arbitration agreements").

I would thus reverse the district court's decision allowing Moses' non-core claim to remain in the bankruptcy court.

I.

To begin with the obvious, a claim is constitutionally non-core because it is ancillary to the underlying bankruptcy. In recognition of that fact, a bankruptcy judge's dominion over non-core claims is limited by Article III, § 1 of the

47

Constitution to submitting "proposed findings of fact and conclusions of law to the district court, for that court's review and issuance of final judgment." Stern v. Marshall, 131 S. Ct. 2594, 2602 (2011); see also id. at 2620 (holding that a bankruptcy judge's authority is likewise limited for claims that are statutorily core but constitutionally non-core); see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 71 (1982) (describing the enforcement of non-core state-created private rights as separate and apart from "the restructuring of debtor-creditor relations"). Further, the Bankruptcy Code itself limits a bankruptcy judge's authority to hear certain state law matters, even when the resolution of those matters may affect the underlying estate. See 28 U.S.C. § 1334(c)(2) (requiring that bankruptcy courts "abstain from hearing" certain non-core state law claims); 28 U.S.C. § 1334(c)(1) (providing that bankruptcy courts may "abstain[] from hearing a particular proceeding," including core and non-core matters, "in the interest of comity with State courts or respect for State law"); see also Stern, 131 S. Ct. at 2619-20.

The core/non-core distinction, however, is not mechanically dispositive in deciding whether a bankruptcy judge may refuse to send a claim to arbitration. See Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011, 1021 (9th Cir. 2012) ("We agree that the core/non-core

48

distinction, though relevant, is not alone dispositive."); <u>In re</u>
<u>Mintze</u>, 434 F.3d 222, 229 (3d Cir. 2006) ("The core/non-core
distinction does not . . . affect whether a bankruptcy court has
the discretion to deny enforcement of an arbitration
agreement."). Instead, what matters fundamentally is whether
compelling arbitration for a claim would inherently undermine
the Bankruptcy Code's animating purpose of facilitating the
efficient reorganization of an estate through the
"[c]entralization of disputes concerning a debtor's legal
obligations . . . ." <u>Phillips v. Congelton, LLC (In re White</u>
<u>Mountain Mining Co.)</u>, 403 F.3d 164, 170 (4th Cir. 2005).

Although the mere designation of a claim as non-core does
not end the inquiry, I agree with our sister circuits that
bankruptcy courts <u>generally</u> have no discretion to refuse to
arbitrate a non-core claim. As the Ninth Circuit has observed,
surveying other circuits:

> The core versus non-core distinction has been
> articulated by our sister circuits as follows:
> generally, bankruptcy judges do not have discretion to
> refuse to compel arbitration of non-core matters
> because they are generally only tangentially related
> to a bankruptcy case. Bankruptcy courts may, however,
> exercise discretion to refuse to compel arbitration of
> core bankruptcy matters, which implicate more pressing
> bankruptcy concerns. Yet, even as to core
> proceedings, the bankruptcy court will not have
> discretion to override an arbitration agreement unless
> it finds that the proceedings are based on provisions
> of the Bankruptcy Code that inherently conflict with
> the Arbitration Act or that arbitration of the claim

would necessarily jeopardize the objectives of the Bankruptcy Code.

Ackerman v. Eber (In re Eber), 687 F.3d 1123, 1130 n.6 (9th Cir. 2012) (internal citations and quotation marks omitted); see also Crysen/Montenay Energy Co. v. Shell Oil Co. & Scallop Petroleum Co. (In re Crysen/Montenay Energy Co.), 226 F.3d 160, 166 (2d Cir. 2000) (embracing the conclusion "that bankruptcy courts generally must stay non-core proceedings in favor of arbitration"); Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1150, 1160 (3d Cir. 1989) (same); Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.), 479 F.3d 791, 796 (11th Cir. 2007) (same); see also Fred Neufeld, Enforcement of Contractual Arbitration Agreements Under the Bankruptcy Code, 65 Am. Bankr. L.J. 525, 526 (1991) (arguing in support of the Third Circuit's conclusion in Hays, 885 F.2d at 1150, that "bankruptcy courts do not have the discretion to deny enforcement of arbitration clauses in noncore adversary proceedings brought by the trustee").

Dissenting from the majority's conclusion that Moses' non-core claim should be sent to arbitration, Judge Niemeyer cites the Fifth Circuit's decision in Gandy v. Gandy (In re Gandy), 299 F.3d 489 (5th Cir. 2002), as supporting the proposition that "courts have regularly refused to bifurcate related core and

50

non-core matters." In <u>Gandy</u>, however, the Fifth Circuit went so
far as to observe that "bankruptcy courts <u>generally do not have</u>
<u>discretion</u> to decline to stay proceedings involving non-core
matters." <u>Id.</u> at 495 (emphasis added) (also observing that it
is "universally accepted" that bankruptcy courts generally do
not have such discretion); <u>see also</u> <u>Hays</u>, 885 F.2d at 1150,
1160. Instead, <u>Gandy</u> determined that a bankruptcy judge's
discretion primarily extends "to refuse to enforce an otherwise
applicable arbitration agreement when the underlying nature of a
proceeding derives exclusively from the provisions of the
Bankruptcy Code and the arbitration of the proceeding conflicts
with the purpose of the Code." 299 F.3d at 495; <u>see also</u>
<u>Crysen/Montenay</u>, 226 F.3d at 166 ("[T]he presumption in favor of
arbitration generally will trump the lesser interest of
bankruptcy courts in adjudicating non-core proceedings that
could otherwise be arbitrated."). Factually, <u>Gandy</u> involved
"three causes of action that derive[d] entirely from the federal
rights conferred by the Bankruptcy Code" and were thus not
available outside of bankruptcy to the debtor. 299 F.3d at 495,
497. The debtor's complaint, the court found, also implicated
"non-bankruptcy contractual and tort issues in only the most
peripheral manner." <u>Id.</u> at 497 (internal quotation marks
omitted). Such non-bankruptcy causes of action, the court
concluded, were simply "inconsequential relative to the

51

bankruptcy causes of action." Id. at 500. As discussed further below, the same cannot be said of Moses' state-law claim under the NCDCA.

## II.

A bankruptcy judge's discretion to deny arbitration of non-core matters is thus necessarily narrow. As we suggested in Phillips in the context of a core proceeding, the discretion to deny arbitration should be limited to cases where arbitration would "substantially interfere[] with the debtor's efforts to reorganize." Phillips, 403 F.3d at 170. Paradigmatically, substantial interference occurs when the resolution of the claim will necessarily affect reorganization in a significant way, and arbitration will thus inherently conflict with the purposes of Bankruptcy Code. See id. In Phillips, for example, we confronted whether an individual was owed money by a debtor – a classic core claim. The debtor's bankruptcy plan had yet to be approved, the core claim was "critical to . . . the plan of reorganization," and sending the proceeding to arbitration would have jeopardized the reorganization process. Id.

No such danger is present here, however, regarding Moses' non-core claim under the state debt collector statute. Moses' Chapter 13 bankruptcy plan has already been approved, and unsecured creditors like CashCall will likely receive nothing. See J.A. 42-50. Nonetheless, the district court affirmed the

bankruptcy court's refusal to send the claim to arbitration, reasoning that the non-core claim was essentially one for damages arising out of the core proceeding and was thus "inextricably intertwined" with it.  J.A. 127.

It is true that Moses' core and non-core actions share one common question.  The core action seeks a declaration that CashCall's proof of claim was void under the North Carolina Consumer Finance Act.  The non-core claim is based, in part, on an allegation that CashCall sought to collect on an invalid debt, while also alleging that CashCall "has willfully engaged in other and further violations of the North Carolina Prohibited Acts by Debt Collector as may be shown through discovery and proved at trial."  J.A. 39.

But the fact that the claims may share a question does not mean that arbitrating one of them will pose an inherent conflict with the efficient reorganization of a debtor's estate.  Although the district court itself provided no reasons why it believed such a conflict was inevitable, it suggested in one sentence that the potential for inefficiency and "inconsistent results" justified the bankruptcy court's actions.  J.A. 128.  As for any potential inefficiency and delay, if the bankruptcy court retained jurisdiction over Moses' non-core claim, it could only issue findings of fact and recommendations of law, which would then be subject to de novo review by the district court

before a final order could be entered.  But if the claim went to arbitration, the arbitrator's order would simply be subject to enforcement by the district court, with any proceeds then distributed as part of the estate.[2]  See Hays, 885 F.2d at 1158.

Furthermore, Moses' non-core claim shares little overlap with the core claim, apart from the question whether the underlying loan was void in the first place.  The non-core litigation will likely require detailed and time-consuming findings regarding CashCall's conduct in trying to collect on the loan, other violations of the state statute, and damages like emotional distress.  As the bankruptcy judge observed regarding the non-core claim, "[t]hese damages are unrelated to the Defendant's proof of claim and are only related to the bankruptcy case in that if successful, the bankruptcy estate will recover any non-exempt funds and disburse them to claims in accordance with the bankruptcy code."  J.A. 87.  Although the core and non-core claims may overlap in one respect, they cannot be said to be inextricably intertwined such that the denial of arbitration was proper.

---

[2]  As discussed further below, it is possible that the arbitration agreement is entirely unenforceable on its face, as Moses now argues, because of its tribal choice of law and forum selection provisions.  Neither the bankruptcy court nor district court, however, made factual findings about the effect of those provisions in the loan agreement, and we cannot reach the issue on the record before us.

Moses additionally argues that arbitration of the non-core claim could substantially interfere with the bankruptcy proceedings by allowing an arbitrator to decide an issue inextricably interrelated with the core claim (the validity of the loan agreement) and thus potentially bind a bankruptcy judge through collateral estoppel. Such a danger, however, is speculative at best. As the Supreme Court has held, "arbitration proceedings will not necessarily have a preclusive effect on subsequent federal-court proceedings." Dean Witter, 470 U.S. at 223 (citing McDonald v. West Branch, 466 U.S. 284 (1984)); see also Hays, 885 F.2d at 1158-59 (applying Dean Witter to a bankruptcy context). Further, the Court in Dean Witter noted that "courts may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding." Dean Witter, 470 U.S. at 223; see also Hays, 885 F.2d at 1158-59. Finally, to the extent that any danger of preclusion remains, a court may simply stay arbitration proceedings for some brief period until it has ruled on the underlying core claim.

There is thus no reason to believe that arbitration in these circumstances will substantially interfere with Moses' bankruptcy and present an inherent conflict with the purposes of the Bankruptcy Code. Indeed, the mere possibility of generic litigation-related exigencies, inherent in the act of litigating

55

in another forum, cannot justify the refusal to arbitrate a non-core claim. As the Third Circuit observed in <u>Hays</u>, Congress' decision to restrict a bankruptcy court's jurisdiction over non-core claims, and to require that certain claims be heard in state court, shows that centralization is not, in and of itself, a valid reason to deny arbitration. 885 F.2d at 1159-60. The court further concluded that "even if there were some potential for an adverse impact on the core proceeding [as a result of arbitration], such as inefficient delay, duplicative proceedings, or collateral estoppel effect, Hayes [sic] has not shown that it would be substantial enough to override the policy favoring arbitration." <u>Id.</u> at 1158.

I reach the same conclusion about three additional possible rationales for a refusal to send a claim to arbitration in these circumstances. First, the Fifth Circuit in <u>Gandy</u> determined that a bankruptcy judge may refuse to arbitrate state-law claims when those claims are "inconsequential" compared with any core-claims. <u>Gandy</u>, 299 F.3d at 500. Without embracing <u>Gandy</u>'s legal conclusion about the arbitrability of such claims, I believe that Moses' non-core claim cannot be called inconsequential. Whereas Moses' declaratory judgment action seeks invalidation of an alleged $1,929.02 debt owed to CashCall, her state NCDCA claim seeks substantial damages, including those for emotional distress and anxiety, and

56

statutory penalties up to $4,000 per violation of the Act. J.A. 39, 87. As previously described, the state cause of action requires a court to make detailed determinations regarding CashCall's conduct before Moses declared bankruptcy – apart from the single shared question regarding the illegality of the underlying loan - including allegations that CashCall "has willfully engaged in other and further violations of the [Act]" that go beyond attempting to collect an invalid debt. J.A. 39. Against that backdrop, the state-law action is not inconsequential, or entirely peripheral to the core claim.

Second, Judge Niemeyer suggests that the bankruptcy court may have been justified because Moses' estate could be enriched or depleted as a result of litigation. If Moses prevailed, the estate could potentially benefit from any damages received – a result that certainly would not frustrate creditors who could share in the spoils. And if she lost, the costs of unsuccessful litigation could partly deplete the estate. But if such generic considerations were enough to justify a denial of arbitration, there would be little limit to a bankruptcy judge's discretion. Neither Phillips nor the Federal Arbitration Act countenance that result. As previously observed, Phillips instead approved the bankruptcy court's refusal to send a core claim to arbitration only after finding that "the arbitration would have substantially interfered with the debtor's efforts to

reorganize." 403 F.3d at 170. There has been no such showing here.

Third, Judge Niemeyer argues that our holding pays insufficient attention to the 800-pound gorilla lurking in the litigation, namely, the enforceability of the arbitration agreement itself. For the first time on appeal, Moses argues that the tribal arbitration provisions specified in the agreement are illusory. She specifically maintains that "there is no such thing as arbitration conducted by the Cheyenne River Sioux Tribe, there are no tribal representatives authorized to conduct arbitration, and there are no tribal consumer dispute rules." Br. of Appellee 2. CashCall's strategy, as Moses alleges, is thus to "shield its illegal scheme from any American court and any American law" by sending claims into "a legal black hole called tribal arbitration." Id. at 2 (citing Heldt v. Payday Fin., LLC, No. CIV 13-3023-RAL, 2014 WL 1330924, at *21 (D.S.D. Mar. 31, 2014)).

The choice of law and arbitration provisions in question indeed appear similar to others used by CashCall that have been increasingly scrutinized, and at times derided, by the courts. See Jackson v. Payday Fin., LLC, 764 F.3d 765, 774-76 (7th Cir. 2014) (refusing to compel arbitration under similar provisions); Inetianbor v. CashCall, Inc., 962 F. Supp. 2d 1303, 1308-09 (S.D. Fla. 2013) (finding a similar arbitration agreement to be

void); <u>Heldt</u>, 2014 WL 1330924, at *17-20 (enumerating pervasive problems with enforcement of a similar agreement).

Moses, however, did not raise the issue before the district court or bankruptcy court, and those courts did not make any relevant factual findings about the nature of the loan agreement or its arbitration provisions. Further, CashCall argues in its reply brief that the provisions governing Moses' agreement are substantially different from those that other courts have considered – an argument that Moses could not respond to and that we are not equipped to resolve. <u>See</u> <u>In re Under Seal</u>, 749 F.3d 276, 285 (4th Cir. 2014) ("Our settled rule is simple: [a]bsent exceptional circumstances, . . . we do not consider issues raised for the first time on appeal." (internal quotation marks omitted, alterations in original)). Without more fulsome briefing and a more developed record, we simply cannot reach the enforceability of the agreement.

Judge Niemeyer nonetheless argues that the mere prospect of additional litigation over enforceability may itself help justify the decision not to send Moses' non-core claim to arbitration. In essence, such cart-preceding-horse logic would reject an arbitration agreement because the agreement may be challenged. The dissent "imagine[s] scenarios" in which the length of time it may take to litigate a challenge of the arbitration agreement could prevent Moses' creditors from

sharing in any augmentation of the estate through damages received. But imagined conflicts are not enough to substantially and inherently interfere with a debtor's reorganization. That is particularly the case here where Moses' bankruptcy plan has already been approved.

III.

In sum, the refusal to send a non-core claim to arbitration requires more than a finding that arbitration would potentially conflict with the purposes of the Bankruptcy Code. Rather, the conflict must be inherent and "sufficient to override by implication the presumption in favor of arbitration." U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indemnity Ass'n (In re U.S. Lines), 197 F.3d 631, 640 (2d Cir. 1999). On the facts before us, I conclude that Moses has failed to carry her burden to show such a conflict.

DAVIS, Senior Circuit Judge, concurring in the judgment in part
and dissenting in part:

The district court allowed a bankruptcy court to protect
its jurisdiction over a state law claim by refusing to
acknowledge that a proof of claim in the bankruptcy case had
become moot by virtue of its abandonment and withdrawal by the
creditor. I am constrained to reject this jurisdictional
sleight of hand.

Appellee Oteria Moses, faced with severe financial
difficulties, obtained from Western Sky Financial, LLC ("Western
Sky") a $1,500 loan; Appellant, CashCall, Inc. ("CashCall") is
Western Sky's successor-in-interest. Upon Moses's filing of a
bankruptcy petition, CashCall filed a proof of claim, seeking
nearly $2,000 from Moses's estate. Moses objected and filed an
adversary proceeding in which she requested (1) a judgment
declaring the loan agreement void under the North Carolina
Consumer Finance Act ("NCCFA") and (2) money damages for
CashCall's alleged violation of North Carolina's Prohibited Acts
by Debt Collectors statute ("North Carolina Debt Collection Act"
or "NCDCA").

CashCall, explaining that it was abandoning its claim for
the outstanding balance of the loan, filed a motion to withdraw
its proof of claim and then, shortly after that, a motion to
compel arbitration of the adversary proceeding. The bankruptcy

court denied both motions.  Upon CashCall's appeal, the district
court denied CashCall's motion for leave to appeal the denial of
its motion to withdraw its proof of claim, and the court
affirmed the bankruptcy court's order refusing to compel
arbitration.

On appeal to this Court, CashCall challenges the bankruptcy
court's denial of its motion to compel arbitration.  CashCall
did not, however, note an appeal from the district court's
denial of leave to appeal the bankruptcy court's order
disallowing withdrawal of its proof of claim.  At oral argument
before this panel, while reiterating that it has abandoned its
proof of claim, CashCall explained that it did not believe it
could appeal to this Court the district court's denial of leave
to appeal.

For the reasons stated below, I would elect to exercise our
discretion to review the bankruptcy court's denial of the motion
to withdraw the proof of claim, reverse in part, vacate in part,
and remand with instructions that the district court reverse the
bankruptcy court's denial of the motion to compel arbitration.

I.

When reviewing a district court's judgment affirming a
bankruptcy court's order, we "consider directly the bankruptcy
court's findings of facts and conclusions of law." In re
Alvarez, 733 F.3d 136, 140 (4th Cir. 2013).  We review the

bankruptcy court's (as well as the district court's) legal conclusions de novo. <u>Id.</u> Findings of fact are reviewed for clear error. <u>Id.</u>

II.

A.

I look first to the bankruptcy court's denial of CashCall's motion to withdraw its proof of claim. Moses suggests that, despite CashCall's representations to the bankruptcy court and to this Court that it has abandoned its claim on the loan, the bankruptcy court nevertheless properly denied the motion to withdraw the proof of claim. I cannot agree.

Federal Rule of Bankruptcy Procedure 3006 provides that:

> If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, . . . the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession . . . .

A motion to withdraw a proof of claim under Rule 3006 has been analogized to a motion under Federal Rule of Civil Procedure 41(a), and thus similar considerations govern both motions. <u>See, e.g.</u>, <u>In re Varona</u>, 388 B.R. 705, 726 (E.D. Va. 2008); <u>In re Kaiser Group Int'l, Inc.</u>, 272 B.R. 852, 855 (D. Del. 2002); <u>In re 20/20 Sport, Inc.</u>, 200 B.R. 972, 979 (S.D.N.Y. 1996). "As with a [] motion [to voluntarily dismiss a civil action], a motion to withdraw a proof of claim is left to the court's

63

discretion, which is 'to be exercised with due regard to the legitimate interests of both [parties].'" In re Ogden New York Servs., 312 B.R. 729, 732 (S.D.N.Y. 2004) (quoting 20/20 Sport, Inc., 200 B.R. at 979). "In general, withdrawal should be granted unless the party opposing the motion can demonstrate that it would be legally prejudiced by the withdrawal." Id.; see also In re Lowenschuss, 67 F.3d 1394, 1399–1400 (9th Cir. 1995).

Here, Moses failed to demonstrate that she would be "legally prejudiced" by the withdrawal of CashCall's proof of claim. The bankruptcy court reached the opposite conclusion by reasoning that "allowing CashCall to withdraw its claim would . . . eliminat[e] [the court's] jurisdiction over any cases of action related to the claim," and force Moses "to file an action in the General Court of Justice for the State of North Carolina or proceed with arbitration as required by the loan agreement." J.A. 92. This was legal error; the bankruptcy court is simply incorrect that Moses would suffer cognizable prejudice by litigating her claims in state court or following the arbitration procedures set out in her loan agreement (as supplemented by the availability of judicial review after any arbitration proceedings). Cf. In re Armstrong, 215 B.R. 730, 732 (E.D. Ark. 1997); In re Cnty. of Orange, 203 B.R. 977, 982 (C.D. Cal. 1996). I would decline to hold, at least on the

record here, that it constitutes "prejudice" not to have a United States bankruptcy judge (as opposed to some other adjudicator) decide a state law claim between private parties. Given the absence of any legally cognizable prejudice to Moses should CashCall's proof of claim be withdrawn, the bankruptcy court committed legal error and thereby abused its discretion in denying CashCall's motion. See Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 555 (2014) ("A court 'would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.'" (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990))); Koon v. United States, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

In so concluding, I observe that, although the district court denied leave to file an interlocutory appeal of the bankruptcy court's order disallowing withdrawal of the proof of claim, and although CashCall did not include in its notice of appeal to this Court a challenge to the district court's denial of leave to appeal the withdrawal motion, we may nevertheless assess the propriety of the bankruptcy court's order. Cf. Dart Cherokee, 135 S. Ct. at 555–56 (finding "no jurisdictional barrier" to review of a district court's order, even though the court of appeals denied leave to appeal that order). While the court must "rely on the parties to frame the issues for

decision," <u>Greenlaw v. United States</u>, 554 U.S. 237, 243 (2008),
the Supreme Court has long recognized that "a court may consider
an issue 'antecedent to . . . and ultimately dispositive of' the
dispute before it, even an issue the parties fail to identify
and brief." <u>U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of
Am., Inc.</u>, 508 U.S. 439, 447 (1993) (quoting <u>Arcadia v. Ohio
Power Co.</u>, 498 U.S. 73, 77 (1990) (alterations in original)).

Under the pendent appellate jurisdiction exception to the
final judgment requirement, "we retain the discretion to review
issues that are not otherwise subject to immediate appeal when
such issues are so interconnected with immediately appealable
issues that they warrant concurrent review." <u>Rux v. Republic of
Sudan</u>, 461 F.3d 461, 475 (4th Cir. 2006). "Pendent appellate
jurisdiction is an exception of limited and narrow application
driven by considerations of need, rather than of efficiency,"
and "is available only (1) when an issue is 'inextricably
intertwined' with a question that is the proper subject of an
immediate appeal; or (2) when review of a jurisdictionally
insufficient issue is 'necessary to ensure meaningful review' of
an immediately appealable issue." <u>Id.</u> (quoting <u>Swint v.
Chambers Cnty. Comm'n</u>, 514 U.S. 35, 50–51 (1995)).[1]

---

[1]  Judge Niemeyer, relying on <u>Swint</u>, claims that pendent
appellate jurisdiction is unavailable in this case, because
"there is no <u>final</u> judgment to which review of the bankruptcy

Here, we undoubtedly have jurisdiction to review the district court's affirmance of the bankruptcy court's final order refusing to compel arbitration. See In re Wallace & Gale Co., 72 F.3d 21, 24 (4th Cir. 1995) (generally describing appealable orders in bankruptcy proceedings); see also Noohi v. Toll Bros., Inc., 708 F.3d 599, 604 (4th Cir. 2013) ("In short, a party may appeal the denial of a motion to stay an action concerning a matter that a written agreement has committed to arbitration."). The question, then, is whether we may exercise pendent appellate jurisdiction to concurrently review for legal error the bankruptcy court's order denying withdrawal of the proof of claim. The answer is yes.

---

court's order could be appended." Ante, at 38 (emphasis in original). But Swint simply refused to recognize "'pendent party' appellate jurisdiction." 514 U.S. at 51. In Swint, the Court concluded that "[t]he Eleventh Circuit's authority immediately to review the District Court's denial of the individual police officer defendants' summary judgment motions [based on their alleged immunity from suit] did not include authority to review at once the unrelated question of the county commission's liability." Id. (emphasis added). In any event, the district court's order affirming the bankruptcy court's refusal to compel arbitration is, in function, a final order. The district court's ruling pretermitted all arbitration proceedings, conclusively resolving a specific dispute within the larger case. See Mort Ranta v. Gorman, 721 F.3d 241, 246 (4th Cir. 2013) ("As we have recognized on many occasions, the concept of finality in bankruptcy traditionally has been applied in a 'more pragmatic and less technical way' than in other situations. . . . [W]e have held final and appealable a variety of orders that resolve a specific dispute within the larger case without dismissing the entire action or resolving all other issues." (citations and internal quotation marks omitted)).

Whether the bankruptcy court properly denied leave to withdraw the proof of claim is "inextricably intertwined" with whether it properly refused to compel arbitration. This could not be more clear, because as both the bankruptcy court (explicitly) and the district court (implicitly) recognized, CashCall's abandonment of its proof of claim and consequent release of Moses from her obligations under the loan agreement altogether moots Moses's core claim. And, once CashCall abandons its proof of claim and releases Moses from her obligations under the loan agreement, the sine qua non of the bankruptcy court's justification for retaining jurisdiction over Moses's non-core claim evaporates; there is no core claim to remit to arbitration, and the only question is whether to compel arbitration on Moses's non-core claim. Cf. EQT Prod. Co. v. Adair, 764 F.3d 347, 364-65 (4th Cir. 2014) (suggesting that pendent appellate jurisdiction is available when resolution of a pendent issue is necessary to resolve an issue properly before the court on appeal). Accordingly, I would elect to exercise pendent appellate jurisdiction over the bankruptcy court's order denying withdrawal of the proof of claim.[2]

---

[2] Judge Niemeyer disagrees that the bankruptcy court's order denying withdrawal of the proof of claim is inextricably intertwined with the district court's order affirming the bankruptcy court's refusal to compel arbitration. Ante, at 42-43. I cannot reconcile this conclusion with his determination

Turning to whether CashCall properly designated this order for appeal, I note that "[n]otices of appeal . . . are liberally construed, and we can exercise jurisdiction over orders not specified in a notice of appeal if (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." <u>Powell v. Symons</u>, 680 F.3d 301, 306 n.2 (3d Cir. 2012) (citation and internal quotation marks omitted); <u>see United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.</u>, 495 F.3d 103, 108 n.1 (3d Cir. 2007) (exercising discretion to review an order not specified in the notice of appeal, as there was a "definite connection" between that order and an order that had been specified); <u>see also</u> <u>MLC Auto., LLC v. Town of Southern Pines</u>, 532 F.3d 269, 279-80 (4th Cir. 2008) (recognizing that notices of appeal are to be liberally construed, and that a party may demonstrate an intent to appeal an order not specified in the notice of appeal, as long as the appellee is not prejudiced by the appellant's failure to specifically note that order).

---

that Moses's core and non-core claims are so closely intertwined that they dare not be disaggregated.

As already discussed above, there is undoubtedly a close connection between the bankruptcy court's order on CashCall's motion to withdraw its proof of claim and its order on CashCall's motion to compel arbitration. Additionally, CashCall made clear its desire to appeal the bankruptcy court's order on its withdrawal motion, as it stated time and again that it had abandoned its proof of claim and sought leave before the district court to appeal the denial. Moses, therefore, was on notice that we may take up this issue and, indeed, argued before this panel that the denial of leave to appeal the bankruptcy court's order precluded our review.

In any event, to conclude that we may not review the bankruptcy court's order on CashCall's motion to withdraw suborns its abuse of discretion and permits it, in essence, to solve a problem that does not exist: by denying the motion to withdraw the proof of claim, the bankruptcy court insisted on deciding the abstract question of the validity and enforceability of an abandoned loan agreement, and relatedly, whether CashCall may receive an award from Moses's estate, despite the fact that CashCall indicated it was no longer seeking any such award. Cf. Dart Cherokee Basin Operating, 135 S. Ct. at 556 (recognizing that, should the Supreme Court refuse to review a district court order, which the court of appeals denied leave to appeal, the district court's incorrect statement

of the law would remain impermissibly "frozen in place"); see also Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991) (recognizing a court's fundamental obligation to ascertain controlling law).

In sum, I cannot, as Moses would have us do, ignore CashCall's representations to the bankruptcy court, to the district court, and to us, by way of its counsel's binding judicial admission, that it has abandoned its claim for the outstanding balance of the loan. Having recognized that CashCall released Moses from her obligations under the loan agreement, I would conclude that Moses's core claim has been rendered moot. Under this reasoning, we need not decide whether the bankruptcy court erred in refusing to compel arbitration on Moses's core claim, and are instead left with the narrow question of whether her non-core claim must be referred to arbitration.

B.

I agree with CashCall that Moses's non-core claim must be remitted to arbitration, as doing so would not substantially interfere with her efforts to reorganize.

1.

The FAA "establishes 'a federal policy favoring arbitration.'" Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987) (quoting Moses H. Cone Mem'l Hosp. v.

Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  Simply put, it
requires courts to "'rigorously enforce agreements to
arbitrate'" by compelling arbitration of all claims contemplated
by the arbitration agreement.  Id. (quoting Dean Witter
Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)).

    "Like any statutory directive," however, the FAA "may be
overridden by a contrary congressional command."  Id.
Congressional intent to override the FAA's policy favoring
arbitration may be ascertained from (1) the text of the statute,
(2) its legislative history, or (3) "an inherent conflict
between arbitration and the statute's underlying purposes."  Id.
at 227 (emphasis added).[3]  The party opposing arbitration has the
burden of showing "Congress intended to preclude a waiver of
judicial remedies for the statutory rights at issue."  Id.

    Applying McMahon, we have considered whether there is an
"inherent conflict" between arbitration and the bankruptcy laws
justifying the bankruptcy court's refusal to compel arbitration.
In In re White Mountain Mining Co., L.L.C., 403 F.3d 164 (4th
Cir. 2005), Joseph Phillips initiated an adversary proceeding in
bankruptcy court against White Mountain Mining Company, L.L.C.
("White Mountain"), claiming, inter alia, that money he advanced

---

[3]  Moses does not assert that either the text of the
Bankruptcy Code or its legislative history demonstrates
congressional intent to limit the FAA.  See Moses Br. 13.